## Laster v. Bragg.

### Opinion delivered February 17, 1913.

1. MALICIOUS PROSECUTION—OPINION OF COUNSEL.—When a party lays all the facts before counsel before beginning a prosecution, and acts *bona fide* upon the opinion given by such counsel, though that opinion is erroneous and unwarranted, he is not liable in an action for malicious prosecution. (Page 83.)

2. MALICIOUS PROSECUTION—PROBABLE CAUSE.—When L. filed an information against B. upon advice of the prosecuting attorney, in justice's court, and L failed to appear at the trial, and B was discharged for failure of L. to appear and prosecute, and it does not appear that L. acted in bad faith, the facts do not constitute evidence of want of probable cause, in an action by B. against L. for malicious prosecution. (Page 83.)

3. PRACTICE—MISJOINDER OF ACTIONS—WAIVER OF OBJECTIONS.—When no objection was made by defendants in the court below, for joining two defendants in one action for slander, and for joining an action for malicious prosecution, with that for slander, the defendant will be deemed to have waived objection to the improper joinder, and the question can not be raised for the first time on appeal. (Page 85.)

4. SLANDER—VARIANCE BETWEEN COMPLAINT AND PROOF.—In an action for damages for slander, while it is not sufficient for plaintiff to prove words of a similar import merely, he must prove that defendant used substantially the same words as charged in the complaint, yet a variance in the mere form of expression is not material. (Page 86.)

5.  SLANDER—VARIANCE BETWEEN COMPLAINT AND PROOF.—There is no variance between the complaint and the proof, when, in an action for slander, plaintiff alleged that defendant said of him: "That he is the damndest thief in the county, and we are going to make an example of him," and showed by the proof that he said: "That he was a damn thief, and that he would lose the rent to get to prosecute him," because the actionable word used is the word "thief," and the words accompanying it are merely descriptive, and the slander proved substantially corresponds with the allegations of the complaint.  (Page 86.)

Appeal from Lonoke Circuit Court; *Eugene Lankford,* Judge; reversed as to J. H. Laster, affirmed as to Charles Laster.

### STATEMENT BY THE COURT.

D. F. Bragg filed a complaint in the Lonoke Circuit Court against J. H. Laster and Chas. Laster in three counts. The first and third counts alleged malicious prosecution and the second, slander. The first paragraph of the complaint alleges in substance that on or about the 25th day of October, 1911, the defendants maliciously and without probable cause instituted a prosecution against plaintiff before a justice of the peace, charging him with having stolen cotton belonging to defendants and disposing of the same. The second paragraph of the complaint alleges that the defendants on the 24th day of October, 1911, in the presence of and in conversation with one of his neighbors uttered the following false and malicious words of and concerning the plaintiff: "That he (plaintiff) is the damndest thief in the country, and we are going to make an example of him." The third paragraph of the complaint alleges in substance that on the 15th day of November, 1911, the defendants maliciously and without probable cause instituted a prosecution against plaintiff before a justice of the peace, charging him with having stolen cotton belonging to defendants and disposing of the same.

The defendants answered, denying all the material allegations of the complaint.

The plaintiff and his witnesses testified to a state of facts substantially as follows: During the year 1910

the plaintiff, D. F. Bragg, rented land from the defend-
ant, J. H. Laster. During the year 1911 he also rented
land from said defendant. He planted and cultivated
about nine acres in cotton and three acres in corn. He
agreed with Laster to pay him as rent one-third of the
corn and one-fourth of the cotton. He raised about four
bales of cotton. About the 5th day of October, 1911,
Laster asked Bragg when he could bring in some cotton
and Bragg replied that he would haul a bale of cotton to
Laster's gin within a few days. A few days thereafter
Bragg started with a load of seed cotton to Laster's gin.
On his way to the gin he met a neighbor who told him
that Laster's gin was not running that day. Bragg then
climbed upon the levee and saw no smoke coming out of
the smoke-stack of the gin and concluded that Laster's
gin was not running. He then carried his load of cotton
to another gin and sold it in the seed. He carried the
money and ticket showing the weight and price of the
cotton home with him. On the 23d day of October, 1911,
he carried another bale of cotton to England to another
gin and sold it in the seed. He also brought the money
for this cotton home with him and a ticket showing the
weight and price of the cotton. On the 25th day of Octo-
ber, 1911, an information was filed by the deputy prose-
cuting attorney before a justice of the peace in Little
Rock, Arkansas, charging Bragg with the crime of lar-
ceny, alleged to have been committed by stealing an
amount of cotton valued at $50.00, the property of J. H.
Laster. This information was also signed by J. H. Las-
ter and sworn to by him. The warrant of arrest was
issued by the justice of the peace and Bragg was arrested
and brought before the justice for examination. The
deputy prosecuting attorney appeared to prosecute the
case, but Laster failed to appear. After waiting about
three hours for Laster the deputy prosecuting attorney
began the examination of the witnesses and at the con-
clusion of the examination Bragg, with the consent of the
deputy prosecuting attorney, was discharged by the jus-
tice of the peace. The constable who arrested Bragg

said that he notified Laster of the fact and of the time of the trial. Bragg kept the money which he got for the cotton until after he was discharged by the justice of the peace in Little Rock. A few days thereafter he offered the money to Laster and Laster refused to take it, saying that he could not steal his cotton and settle it in that way. Bragg kept the money which he got from the sale of the first bale of cotton for about fifteen days before the affidavit for warrant of arrest was filed before the justice of the peace. He says that the reason he kept it was because he did not have occasion to see Laster and thought it all right to keep the money until it was convenient to see him. He said he had rented land from Laster the year before and had sold a bale of cotton and then paid Laster his part of it.

On the 12th day of November, 1911, J. H. Laster filed another affidavit for warrant of arrest before another justice of the peace in Pulaski County. In this affidavit it was charged that Bragg removed and sold a certain amount of cotton, the value of which exceeded ten dollars, with the intent to defraud a landlord in his lien for rent. A warrant of arrest was issued and Bragg was arrested and brought before the justice of the peace, where after examination he was bound over to await the action of the grand jury. The transcript of the justice of the peace shows that the affidavit first charged Bragg with the larceny of the cotton and was then changed to the crime of selling and removing cotton with intent to defeat the landlord's lien on the same. The grand jury failed to indict Bragg and he was discharged.

Another witness for the plaintiff, Schwartz, testified that he had a conversation with the defendant Chas. Laster about Bragg selling the cotton and in the course of the conversation he asked Laster if he had ever said anything about it and Laster replied, "No, and that he was a damn thief and that he would lose the rent to get to prosecute him." Chas. Laster was the son of the defendant J. H. Laster.

J. H. Laster, one of the defendants, testified:

I was the prosecuting witness in the case against Dennis Bragg. I instituted the prosecution for this reason: I was expecting him with some cotton. I had talked with him a few days before when he passed there, about the 5th of October, and I asked him when he was going to bring up some cotton, and he said he would bring some up in a day or two to pay the rent. It was the contract that he was to deliver the cotton at the gin.

About the last of October, I heard that he had hauled the cotton and sold it at England. I went to see Mr. Schwartz and asked him if Dennis had sold any cotton there. He said he hadn't. Then he said, "Wait a minute and let me look at my books." And he went and looked over the books and then told me that Bragg had sold him a bale on October 12. Then I sent my son over to England and he found that he had sold another there about October 23. That's the reason I had the warrant issued.

Before I instituted the prosecution against Bragg I consulted Judge F. T. Vaughan and he advised me to see the prosecuting attorney. Mr. Rogers was sick and told me to talk to Mr. Kidder. I laid the facts before Mr. Kidder. I told him that I had rented the land for one-third the corn and one-fourth the cotton and that Bragg had carried two bales off and sold them and had not offered to pay the rent. Then we went before Judge Sanders to file information and he issued a warrant. Mr. Kidder wrote the information and I signed it.

On the day set for the trial I was not there. It was my understanding that I was to be notified of the time of the trial, and I think that Judge Sanders wrote the names of the witnesses on the warrant. I was not summoned by the deputy constable, Frank Allison. I was never notified that the case was set for trial at a certain time, before the case was disposed of. My son was not there. The deputy constable came by where I was working and said he would go and arrest Bragg and take him to town and get the case set for trial and then notify me. I supposed he would do as he said he would.

I first learned from Judge Sanders that the case had been disposed of. He told me this the next morning, I think it was, after the case was tried. I went to the judge's office and asked him how about the case; he said it was dismissed. I asked him how it happened he had dismissed it when I was not there, and he said that there were no witnesses there against the fellow and that the prosecuting attorney recommended the dismissal, and that was the reason it was dismissed. Then I told him I would see Kidder and try to get the straight of it. Then I went to Kidder; he told me about the same thing Sanders had—that there were no witnesses against him. I told him what the constable told me and that I had no earthly chance to be there.

Then I consulted Vaughan & Akers and laid all the facts before them, made a full and honest statement, just as I had to Mr. Kidder. I made that statement to both members of the firm and they advised me to go before a justice of the peace of Eagle township and have Bragg arrested. I have known the firm of Vaughan & Akers for some time, and the senior member for fifty years. He is a man of good reputation as a lawyer. He was a circuit judge for several years. Acting upon my lawyer's advice, I instituted proceedings before Justice Mashburn and Bragg was bound over to the grand jury.

At the time I instituted these proceedings, acting on the advice of my lawyers, I honestly believed that I had good grounds for prosecuting Bragg, and I still believe so. If I hadn't I would not have done it. I have no malice whatever against Bragg.

I did not use the language, "We will spend more money than the cotton is worth to prosecute you" (meaning Bragg). I did not say to him, "You, Bragg, can not continue to steal my cotton as you have been doing." When Bragg came up to settle the rent after he had been arrested before Sanders, I told him I couldn't settle, because the matter was in court and I felt that I had no authority to settle, and because I had not rented the land for a money rent, but for one-fourth of the cotton. As

a matter of fact, he has never settled with me at all; but in the next April he sent one bale by Watson, which weighed 495 pounds, out of the last picking, saying that that was a settlement for all the cotton picked. I was not there when the bale came. Charley was there. The preceding year, I bought his cotton at my gin in the seed.

My plantation is near Oakdale in Eagle township, Pulaski County. A "dinky" railroad runs nearby, but trains do not run every day. They pass only when some one along the line wants to ship some freight, or when there is a load of freight to be delivered. I did not agree with Bragg that he might pay the debt for the corn land in money. I have lived in Pulaski County most of the time since 1863. I have made forty-three crops on the place I am on now.

The defendants also deny that they said that Bragg was a damn thief and that they meant to make an example of him, or words to that effect.

Laster stated on cross examination that he never said anything to Bragg about his disposing of the cotton because he considered that Bragg had done a thing which he should not have done. That he consulted Judge Vaughan before he saw Kidder and that Judge Vaughan sent him to the prosecuting attorney. That he related the facts to Judge Vaughan and Mr. Kidder just as he had stated them here. That he talked with Judge Vaughan again after Bragg had been discharged by Justice Sanders. That Judge Vaughan said that the action of Sanders was wrong and advised him to institute a prosecution before Justice Mashburn. That he talked with Judge Vaughan after Bragg had offered to make a settlement and told Vaughan of this fact and of the further fact that he had refused to settle with Bragg. That Judge Vaughan then told him to institute proceedings against Bragg before Justice Mashburn. Laster stated that his gin was running on the day that Bragg sold the cotton and that Bragg went a roundabout way to another gin and sold the cotton.

Earl Kidder, the deputy prosecuting attorney, is a

practicing lawyer, and corroborated Laster as to the statements made to him and stated that if Laster had been in court and testified to this state of facts he would not have consented to the discharge of Bragg.

The plaintiff dismissed the first and third counts as to the defendant Chas. Laster. The jury returned into court the following verdict: "We, the jury, find for the plaintiff in the sum as follows: Against J. H. Laster in count No. 1, $250; against J. H. Laster in count No. 3, $250; against Chas. Laster in count No. 2, $250. C. B. Leigh, Foreman."

From the judgment rendered the defendants have duly prosecuted an appeal to this court.

*Vaughan & Akers,* for appellants.

1. In an action for malicious prosecution the evidence is not sufficient to sustain the verdict against the defendant where it not only fails to show want of probable cause for the alleged malicious prosecution, but on the other hand affirmatively shows that there was such probable cause. 19 Am. & Eng. Enc. of L. 650, 663; 26 Cyc. 7, 8; 71 Ark. 422-6-7; 71 Ark. 351, 361; 26 Cyc. 83; 32 Ark. 763; 15 Ark. 345; 63 Ark. 386. The burden is upon the plaintiff to show affirmatively the absence of facts sufficient to induce in the mind of a reasonable person a belief in plaintiff's guilt. 19 Am. & Eng. Enc. of L. 657, 658, 659; 24 How. (U. S.), 544; 16 L. Ed. 765; 79 Ga. 637; 1 Pa. St. 234; 5 W. & S. 438; 97 U. S. 642; 33 Ark. 316; 15 Ark. 345.

2. The court should have held as a matter of law that want of probable cause was not shown, and that when appellants showed that they had in good faith acted on advice of counsel, they had made out a complete defense. 19 Am. & Eng. Enc. of L. 671, 673; 32 Ark. 163; Wells, on Questions of Law and Fact, 256-260; 33 Atl. 211, 212; 13 Enc. Pl. & Pr. 466-467; 59 Hun. (N. Y.), 424; 137 N. Y. 629; 33 N. E. 745; 40 N. Y. Sup. Ct. 41; 19 Am. & Eng. Enc. of L. 685; 56 L. R. A. 649; 131 Wis. 575.

3. Two defendants can not be jointly sued for slander. The court should have sustained defendants' de-

murrer in short which objected to the joinder. 13 Enc.
Pl. & Pr. 62; *Id.* 30; Cooley on Torts, 142; *Id.* 209; 17
Mass. 182; 9 B. Mon. 198.

4. There was a substantial variance between the
allegation and the proof as to the slander. 77 Ark. 64,
70, 71.

*Miles & Wade,* for appellee.

1. To justify a prosecution of the kind complained
of it must appear that the prosecutor not only had rea-
sonable grounds for the belief that the defendant was
guilty of a crime but also that he actually believed that
the defendant was guilty. 63 Ark. 387. Laster did not
use the precaution to inform himself what the law re-
quires. 223 Mo. 294.

2. Advice of counsel is no defense in an action for
malicious prosecution, unless it is shown that a full, fair
and honest statement of the facts of the case were sub-
mitted to counsel. 71 Ark. 351; *Id.* 422; 73 Ark. 439.
And it is for the jury to determine whether he has "fully
and fairly communicated to his counsel the facts within
his knowledge and used reasonable diligence to ascertain
the truth, and also whether he acted in good faith upon
the advice received from counsel." *Supra;* 76 Ark. 43.

3. There is no substantial variance between the
allegation and the proof on the question of slander. They
both plainly charge Charles Laster with being a thief.
56 Ark. 100; 129 S. W. (Ky.), 298; 55 Ark. 494.

4. The record discloses no demurrer in short and
none will be considered here. It was not error, however,
to join these parties as defendants in the action for slan-
der. Kirby's Dig. § 6069, sub-div. 5; 80 Ark. 231; 88
Ark. 127.

HART, J., (after stating the facts). It is first con-
tended by counsel for appellant that the undisputed evi-
dence shows that the defendant J. H. Laster had proba-
ble cause to institute the prosecution against Bragg and
that the court erred in not so decreeing, as a matter of
law. In the case of *Hitson* v. *Sims,* 69 Ark. 439, the

court, speaking through Mr. Justice BATTLE, in discussing an instruction on probable cause, said:

"In cases like this, a probable cause is such a state of facts known to the prosecutor, or such information received by him from sources entitled to credit, as would induce a man of ordinary caution and prudence to believe, and did induce the prosecutor to believe, that the accused was guilty of the crime alleged, and thereby caused the prosecution. *Foster* v. *Pitts,* 63 Ark. 387. The question in this case was not whether a prudent man would have declined, but whether all of the circumstances and facts in appellant's mind, and known to him, or made known to him by creditable persons, before he instituted the prosecution, were sufficient to cause a person of ordinary caution to believe, and did cause him to believe, that the appellee was guilty of the crime charged. The two questions are different. What might be sufficient evidence to convict of a malicious prosecution without probable cause according to one test might not according to the other."

In the case of *L. B. Price Merc. Co.* v. *Cuilla,* 100 Ark. 316, the court held:

"Where one lays all the facts in his possession before the public prosecutor, or before counsel learned in the law, and acts upon the advice of counsel in instituting a prosecution, this is conclusive evidence of the existence of probable cause, and is a complete defense to an action for malicious prosecution."·

In the application of these principles of law to the facts in the instant case, we think the court erred in not directing a verdict for the defendant, J. H. Laster, in the action for malicious prosecution. It may be true, as insisted by counsel for plaintiff, that Bragg was not guilty of the crime of larceny, and that the prosecution should have been under section 2011, Kirby's Digest, which makes it a crime to sell or dispose of property on which a landlord's lien exists, provided such sale be made with the intention to defeat the holder of such lien in the collection of the debt secured by the lien. But even so,

we think that under the facts of this case the court erred
in not directing a verdict for the defendant. As we have
already seen, the general rule is that where a party lays
all the facts before counsel before beginning a prosecu-
tion and acts *bona fide* upon the opinion given by such
counsel, though that opinion is erroneous and unwar-
ranted, he is not liable in an action for malicious prose-
cution. In the instant case the undisputed evidence
shows that the defendant J. H. Laster made a fair state-
ment of all the facts in the case to counsel and acted upon
the advice given upon such statement. He not only tes-
tified to this fact himself but is corroborated by the dep-
uty prosecuting attorney. There is nothing in the evi-
dence which affects the integrity of Laster's conduct in
the matter. The undisputed evidence shows that he acted
in good faith, under the advice of counsel. It appears
both from the testimony of the deputy prosecuting attor-
ney and the defendant himself that the defendant made a
fair and full disclosure of all the facts of the case and
acted throughout in good faith upon the advice of coun-
sel. The defendant testified that under the facts which
were in his possession and which he related to Judge
Vaughan and the deputy prosecuting attorney he be-
lieved Bragg to be guilty, and, acting upon that belief,
upon the advice of counsel, he instituted the prosecution
against Bragg.

There is no fact or circumstance adduced in evidence
tending to contradict this. J. H. Laster was not present
when the examination was held before Justice Sanders,
and satisfactorily accounted for his absence. The pro-
ceedings there amounted to a voluntary dismissal of the
charge because of his absence. Laster had no control
over the case or the actions of the prosecuting attorney
or the justice of the peace, who had jurisdiction of the
case. The discharge of Bragg was not attended by any
facts or circumstances involving the conduct of Laster
which in themselves indicate a want of probable cause
for the prosecution. In such cases the question of proba-

ble cause becomes one of law and the defendant in an action for malicious prosecution will be protected.

The record shows that the case has been fully developed and there is no probability of any other testimony being obtained. Therefore, no useful purpose can be served by remanding the cause for malicious prosecution for a new trial. For the error in not directing a verdict for the defendant the judgment will be reversed and the plaintiff's cause of action dismissed.

On the action for slander, but little need be said. It is first insisted by counsel for defendant that the court erred in permitting the plaintiff to sue J. H. Laster and Chas. Laster jointly for slander. Under our rules of practice, we can not consider that question because it is raised here for the first time. The record shows that no objection was made in the court below to joining both defendants in the action for slander, nor was an objection made to joining the action for malicious prosecution and that for slander. In such cases the defendant under our settled rules of practice will be deemed to have waived any objection that he might legally have to such proceedings, and can not raise them on appeal for the first time. This rule has been in force for many years and has been so uniformly followed that a citation of authorities to support it is unnecessary.

The allegation in the complaint is that the defendant Chas. Laster spoke to L. A. Schwartz of plaintiff the following words:

"That he is the damndest thief in the county and we are going to make an example of him." The testimony offered upon the part of plaintiff but denied by defendant was that he said to Schwartz of Bragg: "That he was a damn thief and that he would lose the rent to get to prosecute him."

This was the only evidence tending to prove the utterance of slanderous words by Chas. Laster. It is insisted by counsel for defendant that there is a substantial variance between the words proved and those alleged in the complaint. Therefore, they contend that under

the rule laid down in *Miller* v. *Nuckolls*, 77 Ark. 64, where it is said:

"It is not sufficient to prove that the defendant made the same charge against the plaintiff in words substantially different from those alleged, even though they may be of equivalent and similar import," the defendant should have had the benefit of a peremptory instruction.

The rule is thus stated in Townsend on Slander, section 365:

"The plaintiff need not prove all the words laid but he must prove enough of them to sustain the action. It is sufficient if the gravamen of the charge as laid is proved, and unless the additional words qualify the meaning of those proved so as to render the words proved not actionable, the proof is sufficient. It is necessary for the plaintiff to prove some of the words precisely as charged, but not all of them, if those proved are in themselves slanderous; but he will not be permitted to prove the substance of them in lieu of the precise words."

Thus it will be seen the rule is, while it is not sufficient to prove words of a similar import merely, and it must be proved that the defendant used substantially the same words as charged, yet a variance in the mere form of expression is not material. The word "thief" is the actionable one in the present case because, unexplained, it amounts to a charge that the plaintiff had been guilty of larceny, which is an infamous crime. *Gaines* v. *Belding*, 56 Ark. 100.

Hence, it will be seen that while the exact words charged in the complaint were not proved, the words proved are substantially proved as laid. Both the words charged and the words proved impute the crime of larceny. The meaning of the rule above announced seems to be that if the words charged to have been spoken are proved but with the omission or addition of words not at all varying or affecting their sense the variance will not be regarded as material. While it is not necessary under the rule to prove as laid, all the words which are alleged to have been spoken by the defendant, yet so much of

them must be proved as is sufficient to sustain the cause of action. As we have already seen, the actionable word in the instant case is the word "thief," because it imputes the crime of larceny. The words accompanying it were merely descriptive and in the application of the rule to the facts of this case we conclude that the slander proved substantially corresponded with the allegation of the complaint, and there was no variance.

This branch of the case was submitted to the jury under proper instructions of the court, and the judgment will be affirmed.