SCHULZE v. PRICE.

4-8557                                        213 S. W. 2d 365

Opinion delivered June 21, 1948.
Rehearing denied October 4, 1948.

*Bob Bailey, Jr.,* and *Bob Bailey,* for appellant.

*Robert J. White* and *Reece Caudle,* for appellee.

SMITH, J. This appeal presents only the question, whether the testimony sustains the verdict upon which the judgment was rendered, from which is this appeal.

The Russellville Livestock Sales Company operates a barn where auction sales of livestock are conducted from time to time. Horses and other livestock are brought there for sale. One Kelley took several horses there for sale. When sold at auction, the animal sold is said to go through the ring, that is, it is sold at public auction. One of Kelley's horses did not go through the ring, and was not sold at auction, but was sold at a private sale to appellant, Schulze, who had told his neighbor, Frank Vaughan, that he desired to buy a horse for light work. Vaughan, who was employed by the Sales Company, told Schulze that there was a horse for sale in the barn which he thought would answer his purposes, and the horse was shown to Schulze by Vaughan.

Schulze detailed the conversation relating to the sale as follows: "Q. You bought the horse on the representation of Mr. Kelley and Mr. Vaughan? A. Yes, sir. Q. And you relied solely on the representation that Mr. Kelley, the owner of the horse, made to Mr. Vaughan and which Mr. Vaughan represented to you? A. I relied on the statement that was made to me by Mr. Vaughan, also

734

the statement coming from Kelley who was supposed to own the horse. Q. You knew that Mr. Kelley was the owner, or you assumed that he was? A. I assumed that he was the owner from what was told me.''

When the horse was shown Schulze it was discovered that it had a knot on its throat which he was told had been caused by a kick or a bruise. The horse was priced to Schulze at $55, but Kelley agreed to reduce the price to $50 on account of the knot. As to this reduction Schulze testified as follows:

''The $55 would have been perfectly all right if the horse had been sound as represented. I agreed to pay $50. My understanding was that the $5.00 was being knocked off due to the fact that this horse had this 'knot' caused by a kick or a bruise, otherwise it was sound and had no disease. Q. That was Kelley's representation to Vaughan? A. Yes, sir. Q. That wasn't the representation of Mr. Criner or Mr. Price? A. I don't think that entered into it.''

Price testified that he and Criner operated the Sales Company as partners, and that they did not sell the horse to Schulze, but the sale was made by Kelley. Asked why the check was not made to Kelley, Price said he did not know, that possibly Kelley would not accept the check, but that they cashed it in order to collect a charge of $1.05 for the use of their facilities.

Schulze took the horse home and found it suffering from distemper. He demanded a refund of his money, which the Livestock Sales Company refused to make, and he stopped payment of his check.

The Sales Company sold four other horses for Kelley, which did go through the ring, and the statement given Kelley included the $50 paid for the horse here in litigation. Schulze testified that he sold the horse for $75, but that he had incurred expenses amounting to $65.78, which included feed, medicine, pasturage and the expense of certain plowing, ''that I intended to use the horse for,'' the amount of the separate items not being shown.

When Schulze stopped payment of the check, Price and Criner, doing business as the Russellville Livestock Sales Company, sued Schulze for the amount of the check. The judgment in their favor rendered by the Justice of the Peace was appealed and on the trial of the appeal judgment was again rendered in favor of the plaintiffs, and the garnishment of funds of Schulze on deposit in a bank was sustained.

The cause was heard by the court, by consent, sitting as a jury, and no request was made for declarations of law, or findings of fact, and we may therefore consider only the sufficiency of the evidence to support the judgment.

We think it was sufficient. The court may have found that the Sales Company did not make the sale and collected only for the use of its facilities for the exhibition of the horse for sale. The finding may also have been made that no agent of the Sales Company made any representations as to the condition of the horse, but even so Schulze admits that he knew who the owner was, and for whom Vaughan was acting in exhibiting the horse.

In the recent case of *Ferguson* v. *Huddleston,* 208 Ark. 353, 186 S. W. 2d 152, it was said: ''The general rule is stated in *Drake* v. *Pope,* 78 Ark. 327, 95 S. W. 774: 'It is well-established that a broker cannot be held personally liable to the third party upon a contract for a disclosed principal; and if the third party knew, or had sufficient knowledge to create an inference, that the broker was acting for another, then the broker is not liable. But if he does not disclose his principal nor the fact that he is acting as a broker, but deals personally, then he is liable, although in fact he acted as broker, and his principal may be held after disclosure, but this does not prevent his personal liability if the third party elects to hold him instead of his after-disclosed principal. (Citing authorities.)' ''

Here even though Vaughan participated in making the sale, it is not disputed that he was acting for Kelley, a known principal, for whose representations the Sales

Company was not responsible, as the sale was made by Kelley and not by the Sales Company. The sale was not made by the Sales Company in the usual and ordinary course of its business, or at all, and as it paid full value for Schulze's check, it is entitled to recover the amount paid in cashing it. The judgment of the court below to that effect must be affirmed and it is so ordered.