Horace E. RODGERS *v.* Mrs. Cameron R. LYON & The HEBER SPRINGS SAVINGS & LOAN Association

73-284                                    507 S.W. 2d 95

Opinion delivered April 1, 1974

*C. E. Blackburn*, for appellant.

*Hoyt Thomas*, for appellee.

LYLE BROWN, Justice. This is a dispute between relatives over the right to the proceeds from the sale of a house and

some lots in Heber Springs. The Heber Springs Savings & Loan Association holds the disputed funds in escrow subject to the outcome of this suit. The trial court held that Mrs. Cameron R. Lyon was acting under misapprehension, pressure and undue influence when she signed an agreement whereby Horace E. Rodgers' father was entitled to a share of the proceeds of sale.

Edgar Rodgers, Maude O'Neal and Sue Mitton, were close relatives and all elderly; they lived together at property they owned on Conway Street in Heber Springs. They had a close relative, Mrs. Cameron Lyon, who lived in Chicago, and who visited them quite often. In about 1968 Mrs. Lyon decided to move to Heber Springs. The elderly trio executed a deed to their property to Mrs. Lyon, reserving unto themselves a life estate in it.

Mrs. Lyon shortly found a house on Front Street in Heber Springs which she liked very much and bought it. She proposed that the three relatives move into the house with her, which they did. The trio relinquished their life estates in the Conway Street property and in return Mrs. Lyon conveyed to them each a life estate in the newly acquired property on Front Street. (For some unexplained reason the trio subsequently executed a warranty deed to Mrs. Lyon, subject to their life estate. That instrument was dated Feb. 23, 1970.) Mrs. Lyon then sold the Conway Street property for $7,000 and testified she invested it in the Front Street property.

On August 17, 1972, Mrs. Lyon executed this agreement:

> Whereas, Sue Mitton and Edgar Rodgers have furnished the sum of $7,000 for the purchase of the following property, to wit:
>
> Lots 7, 8, 9, 10 and the West Half of Lot 11, in Block 3 of DICKSON ADDITION to the City of Heber Springs, Arkansas, [Front Street property]
>
> which property was purchased in the name of Cameron R. Lyon, and,

Whereas, the aforesaid Cameron R. Lyon desires to insure that the aforesaid Sue Mitton and Edgar Rodgers shall receive the money which was furnished by them in the purchase of the aforesaid property, in the event the property is sold. Now Therefore,

In the event the aforesaid property is sold by Cameron R. Lyon, her heirs, executors or assigns, it is agreed that the sum of $7,000 shall be paid out of the proceeds thereof to Sue Mitton and Edgar Rodgers, each to receive $3,500.

It is further agreed that this instrument may be recorded and act as a lien on said property.

This agreement is binding on the heirs, executors and assigns of Cameron R. Lyon.

The instrument was signed, notarized and recorded.

Edgar Rodgers died on September 2, 1972, and his only heir, a son, Horace E. Rodgers, brought this suit. He alleged that Mrs. Lyon had sold the subject property and had failed to pay over the said $3,500 mentioned in the agreement.

In her answer to the complaint, Mrs. Lyon asserted that the agreement was for the purpose of giving assurance to the surviving life estate tenants a portion of the sale price should the property be sold prior to their death; that the life estate of Edgar R. Rodgers expired upon his death; and that the agreement did not enlarge or enhance the life estate held by Edgar R. Rodgers.

From best we can tell from the record appellant Rodgers introduced the August 1972 agreement which we have recited and rested his case. There was also a stipulation that The Heber Springs Federal Savings & Loan Association was holding $3,500 in escrow subject to the orders of the court. Counsel for Mrs. Lyon introduced by stipulation the deeds to which we have alluded and the deposition of Mrs. Lyon. We have listed all the evidence in the case.

In substance, the trial court held:

That the agreement purporting to create a lien did not enlarge the life estate of Edgar Rodgers, but was an agreement only to pay him $3,500 if the property was sold during his lifetime;

That Edgar Rodgers died September 2, 1972, extinguishing his lifetime interest and vesting the remaining interest in Mrs. Lyon;

That the said property was sold after the death of Edgar Rodgers and the $3,500 is now in escrow;

That the decedent father of Edgar Rodgers lived with Mrs. Lyon, and was cared for by her and that for this service the defendant should be entitled to some consideration therefor;

That Mrs. Lyon executed the agreement under misapprehension, pressure and undue influence.

That the burden of proof was on Rodgers and he failed to prove his claim by a preponderance of the evidence. That the testimony of Mrs. Lyon is unrefuted except by verified pleadings and statements of counsel. That Rodgers has offered no positive evidence in the trial to contradict the testimony of Mrs. Lyon; and,

That the agreement constitutes a cloud on the lands involved and should be removed and candelled.

We have tried to ferret out of a rather rambling deposition of Mrs. Lyon that part of her testimony which gives her version of the executing of the August 1972 agreement:

Her mother, Maude O'Neal, one of the trio living in the Conway Street property, furnished the money for its purchase ($7,000) but the deed contained the names of Maude O'Neal, Edgar Rodgers, and Sue Mitton. On one of Mrs. Lyon's visits to Arkansas, the trio asked if they could deed the place over to her, reserving a life estate; they felt that Mrs. Lyon would take care of them. Later she bought the property on Front Street, purchasing same with her own money. Shortly after the purchase the trio moved in with her.

Mrs. Lyon got the $7,000 from the sale of the Conway Street property, which she said she used in improving the Front Street property. Then the deeds were executed which vested in the trio a life estate in the Front Street property. That transaction was in consideration of the trio having relinquished their life estates in the Conway Street property.

As to the agreement of August 17, 1972: "You know this whole thing was written up incorrectly, and I was too sick at the time to realize it, and I'll tell you the truth, the very next day I didn't remember having ever signed any such agreement, and I called Judge Olmstead up and complained about it". Her mother had died about a week before. Shortly after the signing she went to the hospital due to a heart condition. Edgar Rodgers died Sept. 2, 1972.

Her mother, Maude O'Neal, wanted Mrs. Lyon to give Edgar Rodgers and Sue Mitton $3,500 each, representing the total amount which Mrs. Lyon received from the Conway Street property. Some of her sisters wanted Mrs. Lyon to do the same thing. Mrs. Lyon told her mother she would grant her request but Edgar and Sue would have to wait until she, Mrs. Lyon, sold the house on Front Street. She did not think she was establishing a lien on the Front Street property. "I was too sick to read it thoroughly enough to see what it really stated." She said she was practically "brow-beaten" by her two sisters from Spain to sign the instrument.

At some later date Mrs. Lyon left Heber Springs and went to live at the Jacksonville Convalescent Center. Sue Mitton did not want to live in the big house on Front Street by herself so Mrs. Lyon sold the house for approximately $23,-000.

The chancellor decided the case on an erroneous basis. When appellant introduced the unambiguous agreement of August 17, 1972, the burden fell on appellee to show that the instrument was executed under misapprehension, pressure and undue influence. There is no contention that the father of appellant exerted any undue influence. Nor is there any proof that appellee took any action to have the contract cancelled. The only action she took, according to her own testimony, was to call her lawyer, who drafted the agreement, and make

her objection known. We do not think appellee met the burden of proof which rested with her, especially in view of the rule of law that she is presumed to have understood the contract. *Connelly* v. *Beauchamp,* 178 Ark. 1036, 13 S.W. 2d 28 (1929). Additionally, there is no merit in the argument that Mrs. Lyon's testimony stood undisputed, because she is one of the litigants. *Davis* v. *Oaks,* 187 Ark. 501, 60 S.W. 2d 922 (1933). We also note that there was not sufficient evidence to support the finding of the chancellor that appellee took care of appellant's father.

The cause is reversed and remanded with directions to enter judgment in favor of appellant.