Toby James COX *v.* Harold McLAUGHLIN, Reliable Truck
Brokers, Inc., d/b/a Champion Transportation Services, Inc.

93-540                                                    867 S.W.2d 460

Supreme Court of Arkansas
Opinion delivered December 20, 1993
[Rehearing denied January 24, 1994]

*John Wesley Hall, Jr., P.A.*, for appellant.

*Cypert, Crouch, Clark & Howell*, by: *James E. Crouch*, for appellee.

ROBERT H. DUDLEY, Justice. Plaintiff sued defendants for breach of contract and malicious prosecution. Defendants moved for summary judgment on both counts. The trial court granted the motion. Plaintiff appeals. We reverse and remand on both counts.

In March 1990, Toby James Cox, plaintiff, was the driver of a truck that was owned by his father, Floyd Cox, and was leased to Westport Trucking Company. Harold McLaughlin, defendant, was employed by Reliable Truck Brokers, Inc., which did business as Champion Transportation Services, Inc. Defendant Champion was a brokerage company that contacted motor carriers and arranged for the transportation of cargo for various shippers. Champion contracted with Westport Trucking to haul a load of Alpo Pet Food from a factory in Crete, Nebraska to a Sam's Wholesale Club in Houston, Texas. The load was to be picked up on March 13 and delivered to Sam's on March 15 or 16. Plaintiff picked up the load in Nebraska on the date scheduled, March 13, and hauled it to Trenton, Texas, when, on March 15, he learned that a check from Westport Trucking to his father had been returned for insufficient funds. He phoned Westport Trucking and was told that the company was without funds, could not pay for hauling the load currently aboard the trailer, and could not pay other amounts that were past due to plaintiff's father. Plaintiff refused to haul the load the rest of the way to Houston without being paid. Plaintiff testified that on that same day, the 15th, he phoned Terry Lafarlette, a broker for defendant Champion, and told him of his predicament. He stated that Lafarlette told him he would have to get his money from Westport Trucking. On Friday, March 16, Champion was informed, apparently by Sam's, that the load might not have been delivered as scheduled. On Monday, the 19th, Champion confirmed the fact that the load had not been delivered to Sam's. Champion called Westport Trucking, and got a description of the tractor, trailer, license number, and plaintiff's driver's license number.

Defendant McLaughlin testified that defendant Champion did not want to lose its valuable brokerage account with Alpo Pet Foods. Champion realized it owed money to Westport Trucking for other loads and that it might offset some of the money that it owed to Westport Trucking by paying plaintiff. In the meantime, plaintiff determined that Westport owed his father about $4,300 for hauling, including the load currently aboard. On the 20th, defendant McLaughlin, on behalf of defendant Champion, reached an agreement with plaintiff by which Champion would pay $4,200 to plaintiff if plaintiff would go ahead and deliver the load to Sam's. Champion paid $2,100 to plaintiff at

that time. The parties disagree about when the other $2,100 was to be paid. Plaintiff says it was due when he got to Houston, and Champion says it was due when the load was delivered to Sam's. Plaintiff got to Sam's on March 22, five days after the originally scheduled date, and Sam's rejected the load. Champion then arranged for plaintiff to unload the dog food at another warehouse. Plaintiff called Champion from that warehouse and asked for the remaining $2,100. Champion refused to pay, and plaintiff refused to unload. Immediately afterwards, an employee of the warehouse told defendant McLaughlin that plaintiff had left the warehouse with the load. Defendant McLaughlin phoned the cargo theft department of the Houston Police and told a policeman that plaintiff had just left the warehouse with his customer's load. The same day, defendant McLaughlin, a resident of Washington County, contacted the office of the Prosecuting Attorney in Washington County and executed an affidavit. As a result, the plaintiff was charged with "Fraud in the acquisition of authorization to provide vehicle transportation of property." *See* Ark. Code Ann. § 5-37-524 (1987). Meanwhile, plaintiff hauled the load back to his home in Trenton, Texas. There is no evidence indicating that plaintiff attempted to remove any of the load from the trailer. Plaintiff was arrested in Texas on the Washington County felony charge. Ultimately, the Prosecuting Attorney was granted leave to nolle prosse the charge.

Plaintiff then filed this suit for breach of contract and malicious prosecution. The trial court granted the motion for summary judgment on the contract count on the ground that plaintiff had a pre-existing duty to deliver the load to Houston, and thus, there was a failure of consideration for the subsequent agreement with defendant Champion. The trial court alternatively held the contract was made under duress. The trial court granted summary judgment on the malicious prosecution count on the grounds that probable cause existed for the felony charge as a matter of law and alternatively on the ground that defendants McLaughlin and Champion relied on the advice of the Prosecuting Attorney.

The standard of review in these cases is well settled. Summary judgment should be granted only when it is clear that there are no genuine issues of material fact to be resolved. If there is any doubt as to whether there are issues to be tried, the motion should be denied. In this case the defendants, as the mov-

ing parties, bore the burden of showing that there were no genuine issues of material fact. Plaintiff is entitled to have all doubts and inferences resolved in his favor, and summary judgment is not proper if reasonable minds could reach different conclusions when given the facts. *Tullock* v. *Eck*, 311 Ark. 564, 785 S.W.2d 31 (1993).

Plaintiff contends the trial court erred in granting summary judgment on the breach of contract count because there is a dispute of a material fact about the failure of consideration, and there is also an issue of material fact concerning duress. We first address the failure of consideration. Defendants contend that plaintiff, *as an agent*, was already bound by contract with Westport Trucking to deliver the load to Sam's in Houston, and therefore, the subsequent agreement with plaintiff was without consideration. The matter is clearly in dispute. The lease contract between plaintiff's father, Floyd Cox, and Westport Trucking provides that "Lessor [Floyd Cox], his drivers, and/or helpers, are not the agents, employees, or servants of Lessee." Plaintiff was one of lessor's "drivers." Even if the plaintiff might be called Westport Trucking's agent, the law is well established that an agent is not liable to a third party for a contractual obligation made by a disclosed principal unless the agent is specifically named in the contract and there is evidence of his intent to be bound. *Schultze* v. *Price*, 213 Ark. 732, 213 S.W.2d 365 (1948).

The proof submitted showed that plaintiff could have been released from his obligation to drive the load to Houston because of a failure of consideration on the part of Westport Trucking, or it might amount to anticipatory repudiation. It is true that, as a general rule, when a party performs an obligation under a pre-existing contract, the law will regard his demand for additional benefits as void for failure of consideration. *See* 3 Samuel Williston, *A Treatise on the Law of Contracts* § 7:36 at 569 (4th ed. 1992). However, we have held that the failure of one party to perform can excuse the other from his obligation, *Stocker* v. *Hall*, 269 Ark. 468, 472, 602 S.W.2d 662, 665 (1980), and, we recognize that, when a party to a contract has, either by words or conduct, definitely manifested an intention not to perform, the other party may treat the contract as ended. *Stocker, supra; Spencer Machine Co.* v. *Hall*, 78 Ark. 336, 93 S.W. 985 (1906). Thus, the proof submitted contains facts by which rea-

sonable minds might conclude that plaintiff was not under a preexisting duty to deliver the load and therefore was free to negotiate a new contract with defendants. Further, the facts are clearly in dispute as to whether the agreement was breached since plaintiff states that he was to be paid when he delivered the load to the warehouse, and defendants respond that plaintiff was to be paid only after the pet food was unloaded.

The trial court also held that the contract between plaintiff and defendants was entered under duress. Again, reasonable minds could reach different conclusions on the facts proved. In order to establish duress that will justify voiding a contract, a party must show that he involuntarily accepted the terms of the opposing party, that the circumstances permitted no other alternative, and that the circumstances resulted from coercive acts by the opposing party. *W.R. Grimshaw Co.* v. *Mevil C. Winthrow Co.* 248 F.2d 896 (8th Cir. 1957), *cert. denied*, 356 U.S. 912 (1958); *see also Oberstein* v. *Oberstein*, 217 Ark. 80, 228 S.W.2d 615 (1950). Economic duress is generally recognized as a valid excuse for voiding a contract. *See Restatement (Second) of Contracts*, Topic 2, Introductory Note at 473-74; *see also* § 176. However, the party alleging duress must show more than a reluctance to accept the contract and the possibility of financial embarrassment. *Grimshaw*, 248 F.2d at 904, *see also Rodgers* v. *Lyon*, 256 Ark. 323, 507 S.W.2d 95 (1974). He must show that the duress resulted from the other party's wrongful and oppressive conduct, and not by his own necessity. *Id.* In addition, he must show that the wrongful conduct deprived him of his own free will and volition. *Id.*

We have no case in point, but, in a case similar to the one at bar, the Supreme Court of Alaska wrote:

Economic duress does not exist, however, merely because a person has been a victim of a wrongful act; in addition the victim must have no choice but to agree to the other party's terms or face *serious financial hardship*. Thus, in order to avoid a contract, a party must also show that he had no reasonable alternative to agreeing to the other party's terms, or as it is often stated, that he had *no adequate remedy* if the threat were carried out. (Citations omitted). What constitutes a reasonable alternative is a question of

fact, depending on the circumstances of each case. . . . Generally, it has been said that "[t]he adequacy of the remedy is to be tested by a practical standard which takes into consideration the exigencies of the situation in which the alleged victim finds himself." (Citation omitted).

*Totem Marine Tug & Barge, Inc.* v. *Alyeska Pipeline*, 584 P. 2d 15, 22 (Alaska 1978) (emphasis added).

We adopt the above standard, and under it and under our standard for review of summary judgment, there are several factors which cause us to reverse. Viewing the facts most favorably against the moving party, there is (1) a dispute about who initiated the contract between plaintiff and defendant Champion, and if Champion initiated the contract it would tend to indicate it was not the victim of a wrongful act; (2) there was proof that defendant Champion might lose its brokerage account with Alpo Pet Foods, but no showing of what serious financial hardship, if any, would result if Champion had not negotiated with plaintiff; (3) there was proof that defendant Champion's employee, defendant McLaughlin, was under a "pressure cooker situation" but no showing that other remedies would be inadequate; and (4) there was a possible dispute about whether plaintiff's actions were "wrongful," but this is not of great significance as wrongful actions by a defendant do not by themselves constitute duress. *Grimshaw, supra.* Accordingly, the trial court erred in granting summary judgment on the breach of contract count.

The trial court also granted summary judgment of the claim for malicious prosecution. In *Farm Service Coop.* v. *Goshen Farms*, 267 Ark. 324, 332, 590 S.W.2d 861, 865 (1979), we set out the elements to be proven in an action for malicious prosecution as: (1) a proceeding instituted or continued by the defendant against the plaintiff, (2) termination of the proceeding in favor of the plaintiff, (3) absence of probable cause for the proceedings, (4) malice on the part of the defendant, (5) damages. The trial court ruled that the defendants "did not lack probable cause because a person of ordinary caution would believe that a crime had been committed."

In the context of malicious prosecution, probable cause means such a state of facts or credible information which

would induce an ordinarily cautious person to believe that the accused is guilty of the crime for which he is charged. *Cordes* v. *Outdoor Living Ctr., Inc.* 301 Ark. 26, 781 S.W.2d 31 (1989). This issue may be decided as a matter of law on summary judgment only if both the facts relied upon to create probable cause and the reasonable inferences to be drawn from the facts are undisputed. *Wal-Mart Stores, Inc.* v. *Yarbrough,* 284 Ark. 345, 681 S.W.2d 359 (1987).

Plaintiff was charged with "Fraud in acquisition of authorization to provide motor vehicle transportation of property." *See* Ark. Code Ann. § 5-37-524 (1987). That statute, which is a part of the section on forgery and fraudulent practices, provides in the part material to this case that a person commits *fraud in the acquisition of authorization* to transport property if, by phone, he acquires the authorization to haul property and thereafter, either (1) fails to deliver the property as agreed "with the intent to defraud the owner or shipper of the goods," or (2) appropriates the property to his own use.

In order to determine whether summary judgment should have been granted on the issue of malicious prosecution, it is necessary to examine the pleadings, depositions, and exhibits to see if reasonable minds could differ over whether the facts presented therein would cause an ordinarily cautious person to believe fraud had been committed. *See Township Buildings, Inc.* v. *Kraus Constr. Co.,* 286 Ark 487, 696 S.W.2d 308 (1985). We have defined ordinary caution as "a standard of reasonableness which presents an issue for the jury when the proof is in dispute or subject to different interpretations." *Hollingsworth* v. *First Nat'l Bank & Trust Co.,* 311 Ark. 637, 640, 846 S.W.2d 176, 178 (1993).

There is no dispute that plaintiff had acquired the authorization to transport this property before the defendants employed him to continue on to Houston. In fact, in the contract count of this case, the defendants argue that their contract was without consideration because plaintiff was already bound to deliver the dog food to Sam's. An ordinarily cautious person simply would not believe that plaintiff was guilty of fraud in the initial acquisition of authorization to transport the load from Crete to Houston. In addition, there is no real dispute that plaintiff,

over the phone, told defendant McLaughlin that Westport Transportation owed his father and him around $4,300, and that he would not continue on to Sam's unless he was paid. There is some evidence that plaintiff asked for less than this amount originally, and then increased the amount of his request. However, defendant McLaughlin testified that it would be "worth it" to him to pay $4,200, because the Alpo Pet Food account was valuable to him, and that he and plaintiff came to a "gentleman's agreement" that plaintiff would be paid $2,100 before he left for Houston, and another $2,100 after the load was delivered to Sam's. Defendant McLaughlin said he would minimize his losses in this way, and the arrangement would prevent jeopardizing the Alpo account. Plaintiff agrees with McLaughlin's statement, except he contends that he was to be paid the second $2,100 when he arrived in Houston. He testified that he asked that the money be paid at that time because he and his father had so much trouble collecting from Westport Trucking. McLaughlin admitted that he knew about plaintiff's difficulties in collecting from Westport Transportation when he made the agreement with plaintiff. In sum, one might argue that plaintiff sought a ransom to continue on the trip, but it cannot be said that an ordinarily cautious person might believe the plaintiff was guilty of the crime of "fraud in acquisition of authorization to provide motor vehicle transportation of property" at the time of contracting with the defendants.

Subsection (b) of the statute provides that one commits fraud in the acquisition of authorization if he fails to deliver the load according to the contract "with the intent to defraud the owner or shipper of the goods." There is disputed testimony about the time it was agreed that plaintiff was to have the load in Houston, but all parties agree that plaintiff delivered the load but Sam's refused to accept it. They agree plaintiff then went to the warehouse and that he left after defendant refused to pay any more money. Plaintiff contends that defendant McLaughlin offered him $1,000, or less than the agreed amount, to leave the load at the warehouse. Defendant McLaughlin contends that plaintiff demanded more than the agreed upon $2,100 before he would unload. There is no evidence whatsoever to indicate that any of the load was taken off the trailer. There are several significant disputed facts and several disputable inferences in the sequence of

events, but, as we have written, the issue may be decided as a matter of law on summary judgment only if both the facts relied upon to create probable cause and the reasonable inferences to be drawn from the facts are undisputed. *Yarbrough*, 284 Ark. at 348, 681 S.W.2d at 362. There are too many conclusions to be reached from the facts and inferences for the trial court to grant summary judgment because defendants "did not lack probable cause."

Even when there is an absence of probable cause, it is a complete defense to a malicious prosecution action if it is found that the defendant made a full and fair disclosure of all of the facts to the prosecutor, and the prosecutor then gave advice, and the defendant acted in good faith on the advice. *Culpepper* v. *Smith*, 302 Ark. 558, 792 S.W.2d 293 (1990). In this case, reasonable minds could differ on whether defendant McLaughlin omitted giving the deputy prosecutor some of the material information. It is important that defendant McLaughlin failed to tell the prosecutor that he initiated the agreement to pay plaintiff. He only told the prosecutor that plaintiff refused to deliver the load unless defendant Champion paid him $4,300. Next, McLaughlin's testimony taken on motion for summary judgment about the time frame of the events and plaintiff's additional demands for money are inconsistent with the deputy prosecutor's record of what McLaughlin told her. The prosecutor's record reflects that defendant McLaughlin did not supply the prosecutor with all of the material dates, but instead told her that "Cox was to deliver the load to Sam's Wholesale in Houston two weeks ago tomorrow. The load was located day before yesterday in Trenton, Texas." In fact, even after the delay during the period of negotiation, the load was only six days late on the date defendant McLaughlin signed the affidavit, and the length of delay in delivering the load is a critical fact in determining whether the plaintiff had the intent to defraud the owner of it. Defendant McLaughlin in his deposition on the motion for summary judgment stated that plaintiff demanded $300 or $400 more for taking the load to the warehouse, after leaving Sam's. The deputy prosecutor's record shows that he told her that plaintiff demanded "$2,800 additional dollars to unload" at the warehouse. In sum, a jury could conclude that defendant McLaughlin did not fairly or accurately lay out the facts, but concealed some and inflated and embellished on oth-

ers. Where there is a conflict about whether there was a complete and fair disclosure of all material facts known to the person complaining to the prosecutor, and where there is direct evidence that he did not make a complete and fair disclosure, the issue of this defense should go to the jury. *Culpepper*, 302 Ark. at 565, 792 S.W.2d at 294 (1990).

Reversed and remanded.

HAYS and BROWN, JJ., dissent.

STEELE HAYS, Justice, dissenting. For a number of reasons, I believe the trial court's order of summary judgment was correct and should be affirmed.

On the issue of malicious prosecution, the law requires malice and a lack of probable cause. *Rogers* v. *General Electric Company*, 341 F. Supp. 971 (1972); *Malvern Brick & Tile Co.* v. *Hill*, 232 Ark. 1000, 342 S.W.2d 305 (1961). As to malice, there is not the slightest evidence that the appellees acted from an ulterior motive or in furtherance of malice or rancor. The only motivation suggested by the evidence before the trial court is that appellees sought only the timely delivery of the cargo to the customer, Sam's Wholesale, and even agreed to pay $4,300 owed by Westport to the appellant (an amount five times greater than the $800 charge for delivery) in order to bring that about. When they learned that appellant had driven away from the JoMar Warehouse without delivering the cargo as promised, they acted as any reasonable person would — they consulted their attorney and, on his advice, reported the problem to the prosecuting attorney. Thus, the actions of the appellees when faced with a dilemma not of their making was entirely appropriate and neither irresponsible nor spiteful.

Second, there can be no serious question as to the existence of probable cause to suspect that appellant had committed a crime. *Gazzola* v. *New*, 191 Ark. 724, 87 S.W.2d 268 (1935). That was the opinion of the Houston police, of appellees attorney and of the deputy prosecuting attorney. The majority concludes that an ordinarily cautious person would not believe Cox was guilty of fraud in the initial acquisition of the cargo, citing Ark. Code Ann. § 5-37-524 (1987). Of course, that was the charge brought by the prosecutor and not attributable to the appellees. Beyond

that, there are two fallacies — first, whether appellant had a specific intent to withhold the cargo when he first acquired the goods, is not conclusive, as the statute makes it a violation if the accused "fails to deliver the products in the time and manner prescribed by the contract, with the intent to defraud the owner or shipper of the goods." Too, the majority maintains that appellant did not learn that the $209 check had bounced until after the cargo was in his possession, and thus he could have had no fraudulent intent. But there was evidence that the check had been previously presented and payment refused by the bank. If appellant's state of mind were crucial, of far greater importance is the fact that appellant admittedly knew that Westport owed his father approximately $4,000, and it was payment of this amount, not the mere $209, which appellant was demanding.

But whether appellant had a specific intent to defraud when he acquired the goods for shipment is beside the point, as it can hardly be denied that when he refused to deliver cargo that he was legally bound to deliver [*See Car Transportation* v. *Garden Spot District*, 305 Ark. 82, 805 S.W.2d 632 (1998)], he subjected himself to the likelihood of prosecution. Whether the particular offense was fraud in the acquisition, or theft by bailee, or extortion, or yet another offense, the party aggrieved by that conduct had, I submit, every right to consult legal advice from private and public counsel and to act in accordance with that advice. There has been no showing in this case that appellees did anything other than that.

A third element of malicious prosecution is the requirement that appellant's prosecution was at the insistence of the defendant. *Rogers* v. *General Electric, supra.* Here it is shown simply that appellees consulted the prosecutor and reported the facts with reasonable accuracy, with no indication that they demanded prosecution.

Finally, even if probable cause was lacking, this court has held from the earliest that it is a complete defense to an action for malicious prosecution if the defendant initiated the prosecution on the advice of a prosecutor or an attorney knowledgeable in the law. *Jennings Motors* v. *Burchfield*, 182 Ark. 1047, 34 S.W.2d 455 (1931); *Price Mercantile Co.* v. *Cuilla*, 100 Ark. 316, 141 S.W. 194 (1911); *Laster* v. *Bragg*, 107 Ark. 74, 153

S.W. 1116 (1913). The testimony of the prosecutor renders that question beyond dispute, as well as the contention that the discrepancy as to the length of time appellant held the goods:

> As far as I can recall and based upon my investigation subsequent to the filing of charges, nothing told to me or my office by Harold McLaughlin or Terry Lafarlette was materially inaccurate or misleading. I now understand, however, that the statement that the load was supposed "to be delivered two weeks ago" is wrong and that it was only six days late. This played no part in my decision to prosecute, as the important facts were Toby Cox was alleged to have retained a load which did not belong to him and would not release it unless someone paid him money.

Turning to the breach of contract claim, I disagree that conduct plainly intended to coerce one party to pay a sizeable sum it does not owe or risk losing a valued customer, can rise to the level of a "contract." The approximate cost of transporting this cargo from Nebraska to Houston was $800, yet appellant refused to complete the delivery until appellees agreed to pay $4,300 owed by Westport to his father. Since appellant could not legally have refused to deliver even against Westport, [*see Car Transport* v. *Garden Spot Dist., supra,*] he certainly could not have done so against appellees.The theory that an anticipatory breach occurred which enabled appellant to negotiate a new agreement overlooks the fact that appellee Champion did not break its contract with Westport, the carrier, in any manner. The breach in this case occurred because of the wrongful acts of the appellant and in that context appellant cannot maintain that he is entitled to enforce a coerced agreement to pay $4,300, five times the cost of the carriage. *DeSoto Life Insurance Co.* v. *Jeffett*, 210 Ark. 371, 196 S.W.2d 243 (1946).

For the reasons stated, I respectfully dissent.

BROWN, J., joins.