Sheridan Farrell BROWNING *v.* Dwain Jackson BROWNING

94-669                                          890 S.W.2d 273

Supreme Court of Arkansas
Opinion delivered January 9, 1995

*Wilson, Engstrom, Corum, Dudley & Coulter*, by: *Timothy O. Dudley*, for appellant.

*Anderson & Kilpatrick*, by: *A. Gene Williams*, for appellee.

ROBERT L. BROWN, Justice. This appeal concerns a suit for negligence brought by appellant Sheridan Browning against his brother, appellee Dwain Browning. The alleged negligence centered on an allegation that Dwain had supplied a rotten and defective rope to Sheridan and failed to warn him of that condition which caused Sheridan to fall from a tree while performing tree services for Dwain. The trial court granted Dwain's motion for summary judgment due to the absence of a genuine issue of material fact. We affirm the trial court's order.

The facts in this case are assembled from the depositions of Dwain and Sheridan. In February 1992, Dwain asked Sheridan to cut down a tree in his yard which had been struck by lightning and had subsequently died. There is no mention in the record of whether Dwain offered Sheridan any pay for this work. Sheridan and Dwain had both previously worked as groundsmen and tree trimmers for Apple Tree Service where they climbed trees utilizing ropes and cut limbs. Because a privacy fence was positioned beside the tree on Dwain's property, Dwain requested Sheridan to use a rope to direct the tree away from the fence when it fell. Dwain told Sheridan that he could use a rope which he kept under his mobile home.

On the morning of February 29, 1992, Sheridan located the rope under Dwain's mobile home and inspected it. Dwain was not present. The rope appeared to Sheridan to be dry, and it had a tan-

nish color. It was about three-eighths or seven-sixteenths of an inch thick, according to Sheridan. When he worked at Apple Tree Service, he usually used ropes which were thicker. He did not notice any nicks in the rope and stated that he would not have used it had it appeared to be unsafe. After inspecting the rope, Sheridan hooked it to one of his belt loops, climbed the tree, and tied it to a "good solid" limb. The rope gave way while he was climbing back down the tree, resulting in injuries to his feet and ankles. He stated that the only explanation he could think of for the rope's breaking was that it was rotten, but that as far as he could tell, the rope looked "okay" before his fall. He did admit that even a new rope would break if it was overloaded.

When asked about his claims that Dwain was negligent, the following colloquy took place:

DEFENSE COUNSEL: Now, you're saying that your brother here was negligent. He did something or he failed to do something to let you know that that rope was rotten or unsound. What is it that he did or didn't do?

SHERIDAN: He — he didn't know enough about his rope. He didn't — he supplied me with a bad rope.

DEFENSE COUNSEL: Do you know when he had last seen that rope or looked at it?

SHERIDAN: I don't know.

DEFENSE COUNSEL: If he had seen that rope let's say the same day the accident happened, looked at it, handed it to you, said, "Use this rope," and you looked at it and saw there was a problem with it, you wouldn't have used it, would you?

SHERIDAN: No.

DEFENSE COUNSEL: You were going to be the one climbing that tree and you'd want to satisfy yourself that that rope was okay, wouldn't you?

SHERIDAN: I wouldn't have used it if I'd seen it — any major defects.

DEFENSE COUNSEL: What should your brother have

done to know that there might be a problem with the rope?

SHERIDAN: He should have looked at it before he gave it to me.

DEFENSE COUNSEL: If he had looked at it, and it looked the same as it looked to you, how would he know that there was any problem with the rope?

SHERIDAN: I don't know. He should have tested it or — he shouldn't have given me a bad rope. I don't know what he should have done.

Dwain testified in his deposition that the rope probably came with the mobile home purchased four years previously and that it was stored with other "junk" under the structure. He stated that one winter a water pipe froze and burst, drenching the area under the mobile home. When asked about the condition of the rope at deposition, this discussion occurred:

PLAINTIFF'S COUNSEL: Did you have any idea there was anything wrong with the rope?

DWAIN: No, sir.

PLAINTIFF'S COUNSEL: At the time that you told Sheridan where the rope was, did it occur to you that it had been wet under there with that rope under there?

DWAIN: I didn't think about it.

PLAINTIFF'S COUNSEL: From your experience with Apple Tree, if a rope stays damp for some period of time, will that weaken the rope?

DWAIN: I didn't think about it because, you know, we've worked in the rain before and gotten the ropes wet. And I just didn't think about it.

Dwain stated that following the accident, he threw the rope away after the insurance adjuster examined the site and took photographs of the tree and the rope.

On appeal from the trial court's order granting Dwain summary judgment, Sheridan argues that genuine issues of material fact concerning the condition of the rope and Dwain's knowl-

edge of it remain to be resolved. We agree with Sheridan that the Arkansas Rules of Civil Procedure and our caselaw make it clear that summary judgment is only appropriate when no genuine issue of material fact exists and when the movant is entitled to judgment as a matter of law. Ark. R. Civ. P. 56 (c); *Dodds v. Hanover Ins Co.*, 317 Ark. 563, 880 S.W.2d 311 (1994); *Young v. Paxton,* 316 Ark. 655, 873 S.W.2d 546 (1994); *Bellanca v. Arkansas Power & Light Co.*, 316 Ark. 80, 870 S.W.2d 735 (1994); *Wyatt v. St. Paul Fire & Marine Ins. Co.*, 315 Ark. 547, 868 S.W.2d 505 (1994). The moving party bears the burden of showing that there are no genuine issues of material fact. *Young v. Paxton, supra*; *Cox v. McLaughlin*, 315 Ark. 338, 867 S.W.2d 460 (1993). In considering a motion for summary judgment, all doubts and inferences must be resolved in favor of the non-moving party, and summary judgment is not proper if reasonable minds could reach different conclusions when given the facts. *Cox v. McLaughlin, supra*; *Tullock v. Eck*, 311 Ark. 564, 845 S.W.2d 517 (1993).

Sheridan in his brief argues that he was on his brother's premises as an invitee and that a duty of ordinary care was owed to him. *Young v. Paxton, supra*; *Derrick v. Mexico Chiquito, Inc.*, 307 Ark. 217, 819 S.W.2d 4 (1991). He further contends that Dwain's duty embraced a duty to warn him of the rope's defective condition, which was a circumstance that Dwain knew about or should have known about. Thus, before deciding the issue of Sheridan's status on the premises, we must first determine whether any proof exists that the rope was rotten and that Dwain knew of this or should have known of it which would then give rise to the duty to warn. *See Schichtl v. Slack*, 293 Ark. 281, 737 S.W.2d 628 (1987), *citing Prosser and Keaton on Torts*, p. 235 (5th Ed. 1984). We conclude that the requisite proof of a defective rope and Dwain's knowledge of its condition was lacking.

We have made it clear in Arkansas that the failure to guard against an occurrence that is not reasonable to anticipate is not negligence. *Benson v. Shuler Drilling Co.*, 316 Ark. 101, 871 S.W.2d 552 (1994); *First Electric Cooperative Corp. v. Pinson*, 277 Ark. 424, 642 S.W.2d 301 (1982); *North Little Rock Transp. Co. v. Finkbeiner*, 243 Ark. 596, 420 S.W.2d 874 (1967). Along that line, we recently discussed the knowledge of an owner of a defective product and the failure to warn as a result. *See*

*Gann* v. *Parker*, 315 Ark. 107, 865 S.W.2d 282 (1993). In *Gann,* a repairman for hire entered the owners' home to repair a gas leak. While performing this function, he came in contact with an overhead electrical ventilator and received a severe electrical shock which caused injuries. The repairman sued the owners, and the trial court granted summary judgment in their favor. In the process of affirming the order, we first noted that there was no showing that a reasonably prudent owner would have discovered the electrical defect inside the ventilator. We held that the defect inside the appliance was not apparent to the owners, and as a result there was no genuine issue of material fact concerning the owners' alleged negligence.

In the case before us, Sheridan hinges his allegation of a defective rope on the twin facts that the rope was estimated to be four years old and had presumably gotten wet when a pipe burst under Dwain's mobile home. We consider these assertions, which are somewhat vague and indefinite, to be insufficient to create a *genuine* issue of material fact regarding the rope's condition. But even assuming that the rope was defective for whatever reason, there is no proof that Dwain knew of this or even that he had reason to know of it. In fact, Dwain testified just to the contrary. The fact that the rope may have been defective never entered his mind, he stated. And Sheridan offered no proof to dispel this other than referencing the age and wetness points already discussed. We cannot say that Dwain, as the reasonably prudent owner of the rope, was aware that it could not be used to perform the assigned task or even that he should have been aware of that fact. Without that knowledge on the part of Dwain, there was no duty to warn.

Finally, as was the case with the defective ventilator in *Gann* v. *Parker, supra,* there was no showing that a defective instrumentality was the proximate cause of Sheridan's fall. Indeed, overload for a rope that size, which admittedly was smaller than the ropes used by Sheridan at Apple Tree Service, may have been the reason. We are also mindful of the fact that Sheridan, an experienced tree climber and trimmer, examined the rope before his climb and found no indication of deficiency. He candidly admitted that he would have satisfied himself about the rope's quality regardless of his brother's suggestion that he use it.

In sum, we can glean no proof from the record sufficient to create a genuine issue of material fact regarding allegations (1) that the rope was defective, (2) that Dwain knew the rope was defective, or (3) as a reasonably prudent person he should have known the rope was defective. Mere age and the possibility that the rope had previously gotten wet may give rise to a theory of the case and conjecture about the rope's condition, but they are not sufficiently probative circumstances to avoid summary judgment.

Affirmed.