MISSOURI CITY STONE, INC. and
HARTFORD INSURANCE GROUP *v.*
Jerry PETERS

74-323                                            521 S.W. 2d 58

Opinion delivered April 7, 1975

*Daily, West, Core & Coffman,* for appellants.

*Floyd G. Rogers* and *Hardin, Jesson & Dawson,* for appellee.

CARLETON HARRIS, Chief Justice. The question here presented is whether the finding of the Workmen's Compensation Commission should be sustained, the commission finding that the compensation statutes of Arkansas apply to an injury sustained by Jerry Peters, appellee herein, in the State

of Oklahoma. Appellants, Missouri City Stone, Inc. and Hartford Insurance Group, are paying claimant under provisions of the Oklahoma Workmen's Compensation Act, but controvert any payments. under the Arkansas act. The question of percentage of disability is not involved, it being recognized that the disability is permanent and total, irrespective of which state act applies. [1] Peters was injured in a rock quarry accident at Wilson's Rock Oklahoma, located approximately 15 miles from Fort Smith, Arkansas. Peters suffered a crushed face and severed spine in the accident and is permanently paralyzed from the waist down. It might be here stated that payment of maximum benefits under the compensation law of one state does not bar an employee from asserting a subsequent claim under the Workmen's Compensation Law of a sister state unless the law of the first state so declares. That situation does not exist in the claim at issue. *McGehee Hatchery Co.* v. *Gunter*, 234 Ark. 113, 350 S.W. 2d 608. Of course, there can be no double recovery; only the difference by which the second award is greater than the first may be recovered. *McGehee Hatchery Co.* v. *Gunter, supra.*

In *International Paper Company* v. *Tidwell,* 250 Ark. 623, 466 S.W. 2d 488, we pointed out, that whether the Arkansas Workmen's Compensation Law can be applied where the claimant is injured in another state, is a mixed question of law and fact; that as to factual determinations, the findings of the commission are binding upon the courts if there is any substantial evidentiary support, and that we must accept that view of the facts which is most favorable to the commission's findings. Still further, that where fair-minded men might honestly differ as to the conclusion to be drawn from facts, either controverted or uncontroverted, the drawing of inferences and reaching of conclusions are for the commission, and not the courts. In *Tidwell,* the commission found it had jurisdiction because appellee was a citizen and resident of Arkansas both prior to and at the time of his injuries, was paid in Arkansas under the supervision of appellant's Arkansas office, and the contract of employment was entered into in this state.

[1] At that time, the Arkansas act provided for a maximum weekly payment of $49.00, while the Oklahoma act only provided for payments of $43.00 per week; also, the Oklahoma act has a ceiling, while Arkansas has no ceiling in cases of permanent disability.

The commission, in reaching its conclusions in the case now before us, quoted from *Tidwell* as follows:

"When we consider the interest that this state has in the welfare of its residents, in minimizing the likelihood of their becoming public charges or objects of local charity, in having a procedure for a remedy readily available to its residents, and in securing compensation to physicians and hospitals in Arkansas which might not otherwise be available to a claimant, we cannot say that reason and logic require a different approach to a liberal construction of our statute because of these limited dissimilarities, in spite of the fact that a different result has been reached in other jurisdictions, and the fact that the injury might be compensable under the laws of another state."

The commission then proceeded to enumerate the facts upon which it predicated its decision and concluded:

"Arkansas has a legitimate interest in the welfare of the claimant and in minimizing the likelihood of his becoming a public charge or object of local charity, and in having a procedure for remedy readily available to him, and in securing compensation to physicians and hospitals in Arkansas which might not otherwise always be available to him."

Peters was allowed compensation benefits at the rate of $49.00 per week, being the maximum benefit that he was eligible to receive under the Arkansas Workmen's Compensation Law, appellants to receive credit for payments made under the Oklahoma Workmen's Compensation Law. From such award, appellants appealed to the Circuit Court of Sebastian County, and that court affirming the commission award, appellants appealed to this court. For reversal, it is asserted that there is no substantial evidence to support the commission's findings, and that the findings do not support the award, points of a similar nature which will be discussed together.

On August 28, 1970, Peters went to the Employment

Security Office in Fort Smith, seeking employment and that office, having previously received an order from the Missouri City Stone Company for a truck driver on a river job at Wilson's Rock in Oklahoma, referred Peters to the job. Peters went to the jobsite and was interviewed by Elmer Partain, Missouri Job Superintendent, who advised him that there were no jobs open at that time but to leave his name, address, and phone number with the head mechanic. A few days later, there was a vacancy for a water truck driver and Partain telephoned Peters that he had this job open.[2] Peters received the telephone call in Alma around 8:00 P.M. at the home of a neighbor, accepted the employment, and reported to the jobsite the next day. Thereafter, Peters continued to reside in Alma and commuted to and from the jobsite each day. In the meantime, Partain had made arrangements with Holt-Krock Clinic in Fort Smith to furnish ambulances and doctor services for anyone who might be injured on the job. After the explosion, and injury of Peters, the latter was taken to Sparks Hospital in Fort Smith, where, according to Partain, the company had "set up" with the doctors. Employees on the job were paid by check out of a Fort Smith bank.

Partain, a permanent resident of Little Rock, testified that upon completion of the Oklahoma job, the company had a job to do in Little Rock; that the services of Peters being satisfactory, the latter was offered a job when the crew moved to Arkansas.[3] The company had no permanent offices in Oklahoma (only a portable field office being maintained at the jobsite), but does have an office at Sweet Home, Arkansas, near Little Rock, the company purchasing the property there in 1968. It does not appear that this office is maintained the year-round, and while there is an office phone, there is no answering service. A shop on the property is used to maintain equipment and trucks. Partain testified that there were three employees on the Oklahoma job from Arkansas. Some other findings considered favorable to appellee were made by the commission, but inasmuch as evidence is not entirely clear on such points, we omit them from this discussion.

---

[2] It is not entirely clear whether Partain made this call from Wilson's Rock or Fort Smith, but we do not consider this fact as being particularly pertinent to the issue at hand.

[3] Peters testified that he had intended to go to Little Rock on the job offered.

Of course, the underlying question is whether the Arkansas Workmen's Compensation Commission had jurisdiction to make any finding or award. Appellant company is foreign to both Oklahoma and Arkansas, being a Missouri corporation. The commission found that Arkansas did have sufficient contacts with the claimant in order to apply its compensation laws, and in accordance with the principles set out in *Tidwell*, it must be remembered that where fair-minded men may honestly differ as to the conclusion to be drawn from facts, the drawing of inferences and reaching of conclusions are within the province of the commission. When viewed in this light, we think the evidence substantial that there was a significant relationship with Arkansas.

Professor Arthur Larson presents an excellent discussion of Workmen's Compensation Laws as they are involved in Conflicts of Laws in 6 Duke Law Journal 1037 (1971), the article being entitled "Constitutional Law Conflicts and Workmen's Compensation." Therein, Professor Larson states:

"The conflicts problem in compensation law, as stressed at the outset, is normally not a choice-of-law question at all, since the forum can apply only one statute, that of its own state, and there is thus no occasion or opportunity to engage in a choice of law. The only 'choice' the forum has is to grant relief under its own statute or to deny relief altogether. With that pair of alternatives, it is easy to see why *some* substantial interest should suffice, without worrying about its relative weight when compared with the interests of foreign states."

He further points out that working uniformity could not be achieved without a simultaneous amendment of all state statutes so that each is a perfect complement of the other, and then says:

"The achievement of such statutory coordination is, of course, entirely improbable; but even if it were possible, there is serious doubt whether the states would find it desirable. The low-benefit states might fear that the operation of a uniform rule would put unpredictable

high-benefit burdens on its employers, while the high-benefit states might fear that in certain combinations of facts employees in whom they have an interest would get an unacceptably low level of compensation.

"The only uniformity to be looked for, then, is the uniform right of all states having a legitimate interest in the injury to apply their own diverse rules and standards - separately, simultaneously or successively."

While some of the items heretofore enumerated bear no particular weight, we think that the overall evidence reflected ample facts to support the award. Of course, there are factual differences between this case and *Tidwell*, but that itself is of no great moment since the factual background of this type of case will rarely be the same. The most important fact of all is that Peters was a resident of Alma, Arkansas at the time he became employed by Missouri City Stone, Inc. and is still a resident of this state. His ties to Arkansas were demonstrated by the fact that he daily commuted to and from the jobsite. It might also be mentioned that any unemployment benefit to which Peters might be entitled, prior to his injury, because of lack of employment, would have been administered in Arkansas. And, of course, this state is interested in minimizing the likelihood of one of its citizens becoming a public charge or an object of local charity. It is obvious, if Peters should become devoid of financial resources, which state, or its citizens would have the responsibility of taking care of him.

Affirmed.

FOGLEMAN and JONES, JJ., concur.

BYRD, J., dissents.

JOHN A. FOGLEMAN, Justice, concurring. I concur in the result, but I consider the language of the opinion to state a new concept of jurisdiction, differing from that upon which we based our finding that there was jurisdiction in *International Paper Company* v. *Tidwell*, 250 Ark. 623, 466 S.W. 2d 488. The policy reasons given there for construing the statute liberally in favor of jurisdiction did not become, either singly

or collectively, a factual basis for the exercise of jurisdiction in Arkansas. They were nothing more than they purported to be — policy reasons for a liberal construction. I submit that the fact that Peters was at all times a resident of Arkansas cannot confer jurisdiction on our commission. Neither can the securing of compensation to Arkansas physicians and hospitals. Nor can the combination. We did not, and should not, under our statute, adopt the rule advocated by Prof. Larson, i.e. that some substantial interest should suffice. If it should, the General Assembly, not this court, should say so.

It was clearly established in *Tidwell* that there *must* be a *statutory* basis for the entertainment of a claim, and without it, a claimant is left either to a common law remedy or to the compensation laws of the state in which the injury took place. There was no coverage here or in *Tidwell*, insofar as the Arkansas law is concerned, except for employment carried on in this state. It cannot be otherwise. See Ark. Stat. Ann. § 81-1302 (c) (Repl. 1960). It is interesting to note, as we did in *Tidwell*, that Prof. Larson notes six grounds upon which applicability of a particular compensation act has been asserted. One of these is the place where the employee resides. But he was not sure that a state could apply its statute on that ground under federal constitutional limitation. He did feel sure that a state was free to apply its laws if it was the place where the injury occurred, where the contract was made or where the employment relation exists or is carried out.

Still, we approach this matter and the Workmen's Compensation Commission did, with a prima facie presumption that the Commission had jurisdiction. Ark. Stat. Ann. § 81-1324 (Repl. 1960) and we did not, as appellant suggests, hold differently in *Duke* v. *Pekin Wood Products Co.*, 223 Ark. 182, 264 S.W. 2d 834. This means to me that the mere filing of a claim makes out a prima facie case of jurisdiction, which is sufficient unless the respondent brings in evidence sufficient to rebut the presumption. Barnhart, Use of Presumptions in Arkansas, 4 Ark. L. Rev. 128, 132; *Continental Gin Co.* v. *Benton*, 104 Ark. 367, 149 S.W. 528; *Nunez* v. *O.K. Processors*, 238 Ark. 429, 382 S.W. 2d 384. See also, *Hollenberg* v. *Lane*, 47 Ark. 394; *Cartwell* v. *Menifee*, 2 Ark. 356; *Craig* v. *Sims*, 160

Ark. 269, 255 S.W. 1; IX Wigmore on Evidence (3d Ed.) 293, § 2494. The situation is not unlike that arising in a civil case where the burden of showing want of jurisdiction lies upon a party moving to dismiss for want of jurisdiction. *Arkansas Land & Cattle Co.* v. *Anderson-Tully Co.*, 248 Ark. 495, 452 S.W. 2d 632.

As I see it, it was not shown by appellant that the commission did not have jurisdiction. The commission held that it did and reached the following pertinent conclusions:

As we review the facts in this case we find that the claimant is a resident of Alma, Arkansas, and was a resident of that city in August of 1970. On or about August 28, 1970, the claimant went to the Fort Smith, Arkansas, Employment Security Division Office seeking employment. This office had already been advised by the respondent of certain employee needs. The claimant was directed by the Fort Smith Employment Security Office to the job site in Oklahoma. The claimant met the Superintendent of the respondent at the site, was interviewed and an application taken, but the claimant was advised that there was no opening at that particular time. The respondent noted the claimant's phone number and address in Alma, Arkansas, and a few days after the interview the Superintendent of the respondent called the claimant and asked him if he was still interested in the job. The claimant replied that he was and the claimant was told to report to work and that he would be put on the water truck. In response to this telephone call the claimant reported to the job site in Oklahoma and was employed by the respondent.

Claimant continued to reside in Alma, Arkansas, and commuted to and from the job site each day. When the claimant was injured he was taken from the job site to a Fort Smith hospital by a Fort Smith ambulance and treated exclusively by the Fort Smith, Arkansas, physicians.

Payroll checks to the claimant were drawn on a Fort Smith, Arkansas, bank. There was also testimony

that the Workmen's Compensation claim of the claimant is being serviced out of Little Rock, Arkansas, office of the respondent as opposed to an Oklahoma office.

The claimant accepted employment for a temporary job in Oklahoma and was later offered full time employment with the company in Arkansas.

The respondent, Missouri City Stone, is a Missouri corporation with its main office in Dallas, Texas, and its parent company, Markham and Brown, is a Texas corporation with its offices in Dallas. Missouri City Stone had only one project in Oklahoma and that was the project where the claimant was injured. Missouri City Stone maintained only a temporary trailer which served as an office at the site in Oklahoma, but maintains a permanent office in Sweet Home, Arkansas, near Little Rock, Arkansas, upon property owned by it. The respondent owns no property in Oklahoma.

The testimony in the case reveals that the Superintendent of the respondent on the Oklahoma job maintains his home both before and after the accident in Little Rock, Arkansas. The evidence further reveals that employees of the Missouri City Stone on the project in Oklahoma were Arkansas residents who worked in Arkansas before and after this accident for the respondent.

The commission might have added that most of the work of appellant which had been performed under its general superintendent had been done in Arkansas; that, in addition to being a shop, the field office in Little Rock affords a place where the company payrolls are made; the checks for the payroll on the Oklahoma job were made out in Fort Smith, Arkansas; and that appellant had been domesticated in Arkansas.

This case is similar to *Tidwell* in that the employer was localized as a resident and the employee was at all times a resident. The only possible distinction is the place where the contract was entered into. I do not believe that appellant in-

troduced sufficient evidence to overcome the prima facie presumption. Peters testified that he accepted the job at his home, when he was called there by appellant's general superintendent by telephone. The place of making of the contract was at least a question of fact. A contract is entered into at the place where the offer is accepted and when made by telephone, it is regarded as made at the place from which the accepting party speaks. 17A CJS 352, Contracts § 356; 17 Am. Jur. 2d 392, Contracts § 53.

There was not sufficient evidence to overcome the prima facie presumption of jurisdiction and, to say the least, there was substantial evidence to support the finding.