S. Blaine McCALEB, III *v.* NATIONAL BANK OF COMMERCE of Pine Bluff

CA 87-347 752 S.W.2d 54

Court of Appeals of Arkansas
Division I
Opinion delivered June 22, 1988

54

*McKenzie & Specht*, by: *James W. McKenzie, Jr.*; and *Ramsay, Cox, Bridgforth, Gilbert, Harrelson & Starling*, by: *Rosalind R. McClanahan*, for appellants.

*Bridges, Young, Matthews, Holmes & Drake*, by: *David L. Sims*, for appellee.

MELVIN MAYFIELD, Judge. This is an appeal from a summary judgment awarded appellee, National Bank of Commerce of Pine Bluff (NBC), on a guaranty agreement. From the matters included in the record on appeal, it is undisputed that appellants were stockholders in McCauley Aviation, Inc., an Arkansas corporation with its principal place of business in Pine Bluff. In order to obtain a $180,000.00 line of credit with NBC, the appellants, on February 22, 1982, executed a guaranty agreement which provided in pertinent part as follows:

> For value received and in consideration of advances made or to be made, or credit given or to be given, or other financial accommodation from time to time afforded or to be afforded to *McCauley Aviation, Inc.* (hereinafter designated as "Debtor"), by NATIONAL BANK OF COMMERCE OF PINE BLUFF, . . . the undersigned hereby jointly and severally guarantee the full and prompt payment to said Bank at maturity and at all times thereafter of any and all indebtedness, obligations and liabilities of every kind and nature of said Debtor to said Bank (including liabilities of partnerships created or arising while the Debtor may have been or may be a member thereof), howsoever evidenced, whether now existing or hereafter created or arising, whether direct or indirect, absolute or contingent, or joint or several, and howsoever owned, held or acquired, whether through discount, overdraft, purchase, direct loan or as collateral, or otherwise; and the undersigned further agree to pay all expenses, legal and/or otherwise (including court costs and attorney's fees, paid or incurred by said Bank in endeavoring to collect such indebtedness, obligations and liabilities, or any part thereof, and in enforcing this guaranty). The right of recovery, however, against the undersigned is limited to ___ DOLLARS ($ ___ ) plus interest on all loans and/or advances hereunder and all expenses hereinbefore mentioned.

The space for a dollar limitation on the guaranty was left blank.

McCauley Aviation, Inc. had several other loans with appellee which were secured by collateral, financing statements, and security agreements. In 1985 McCauley Aviation went into bankruptcy. Appellee was apparently paid in full on all of McCauley Aviation's promissory notes except one for $98,456.39 secured by an airplane. After receiving authorization from the bankruptcy court, appellee repossessed the airplane, sold it, relying on the guaranty agreement, and then, sued appellants for the deficiency. Summary judgment was granted appellee for $52,593.61 principal, plus interest, and attorney fees.

On appeal, appellants first argue that the guaranty is too ambiguous to be enforceable because a material term, the limit of the sum guaranteed, was omitted. On the other hand, appellee contends that the guaranty agreement is complete without the insertion of a limitation on the amount guaranteed; that a limitation is not an essential term of a guaranty agreement unless the parties specifically agree to a limitation; and that as executed the guaranty is an unconditional, unlimited guaranty, securing *all* McCauley Aviation's debts to NBC.

In *National Bank of Eastern Arkansas* v. *Collins*, 236 Ark. 822, 370 S.W.2d 91 (1963), the court said that a guaranty has been defined as a collateral undertaking by one person to answer for payment of a debt of another; that a guarantor is entitled to a strict construction of his undertaking and cannot be held liable beyond the strict terms of his contract; and that a guarantor, like a surety, is a favorite of the law and his liability is not to be extended by implication beyond the express limits or terms of the instrument, or its plain intent. *See also, Lee* v. *Vaughn*, 259 Ark. 424, 534 S.W.2d 221 (1976). However, a guaranty contract, like any other contract, must be interpreted according to its language, if clear and unambiguous. *Bank of Morrilton* v. *Skipper, Tucker & Co.*, 165 Ark. 49, 263 S.W. 54 (1924). In ascertaining the meaning of the language of a contract of guaranty, the same rules of construction control as apply in the case of other contracts. In accordance with such rules it is important, if possible, to determine and give effect to the intention of the parties as ascertained by a fair and reasonable interpretation of the terms used and the language employed, read in the light of the attendant circumstances and the purposes for which

the guaranty was made. *Ouachita Valley Bank* v. *DeMotte*, 173 Ark. 52, 291 S.W. 984 (1927).

Although there are no Arkansas cases on point, we find guidance in two cases from other states cited by the appellee. In *North Carolina National Bank* v. *Corbett*, 271 N.C. 444, 156 S.E.2d 835 (1967), a woman had signed a guaranty for her husband to obtain a line of credit. The guaranty secured "any and all notes, drafts, obligations and indebtednesses of Borrower," and provided that "the amount of principal at any one time outstanding for which the undersigned shall be liable as herein set forth shall not exceed the sum of $ ___ ." The court considered the issue to be whether the failure to insert in the guaranty a limitation on the guarantor's liability rendered the instrument void. It concluded that:

> The blank space and the antecedent wording provided the guarantor opportunity to limit her liability for her husband's debts. She executed the agreement without inserting any limitation. She cannot, thereafter, ex parte, alter the terms of the agreement. The guaranty is to pay the notes . . . . Its terms are clear, free of ambiguity. Consequently, there is nothing for the Court to construe. The meaning becomes a question of law.

156 S.E.2d at 837.

In another case cited by the appellee, *Cessna Finance Corporation* v. *Meyer*, 575 P.2d 1048 (Utah 1978), the facts were remarkably similar to those in the case at bar. Intermountain Flight Center, Inc., had defaulted on its debt to Cessna Finance Corporation and filed a petition in bankruptcy. Cessna repossessed the collateral, sold it, and filed suit for a deficiency judgment against the guarantors. The trial court ruled as a matter of law that the guarantor's liability was based on an unlimited and continuing guaranty; that the agreement was valid; and that the failure to place a figure in a blank and thereby limit the guarantor's liability to a specific sum indicated unlimited liability. On appeal, it was argued that the guaranty agreement was not enforceable because the provision was left blank. The appellate court specifically noted that the appellant claimed that the amount limiting liability was an essential

element to the guaranty agreement and that the failure to include this term caused the contract to fail for lack of mutual assent. The court then stated:

> The unfilled blank, if not essential to the understanding between the parties, may be rejected as unnecessary and mere surplusage if it appears that the omission was intended. In the instant case, the appellant was eager to obtain financing from the respondent and, therefore, volunteered to execute the guaranty agreement. The agreement was a form contract and was given to the guarantors to fill in. The guarantors did fill in all the blanks except the one that limited their liability and duly executed the document. Respondent had no obligation to limit the amount of liability; that was for the guarantors to do if they so desired. If any of them had wanted to limit his obligation, he could have done so by filling in that blank on the form agreement.

575 P.2d at 1050-51.

■ In the case now under consideration, the guaranty agreement stated "the undersigned hereby . . . guarantee the full and prompt payment . . . of any and all indebtedness, obligations and liabilities of every kind and nature of said Debtor to said Bank." We find this language to be clear and unambiguous. It means that the guarantors' liability is unlimited unless a figure is written in the blank placing a dollar limit on their liability. This interpretation is consistent with the factual situation which the record shows surrounded the making of the agreement—that appellants wished to establish a line of credit with appellee Bank. If appellants had chosen to limit their liability, they could have easily placed a figure in the blank before executing the agreement. The record shows they had ample time to do so, as the document was mailed to them to execute, thus giving them time to study it and even have it examined by their attorney.

Appellants rely heavily on the dissenting opinion in *Shamburger* v. *Union Bank of Benton*, 8 Ark. App. 259, 650 S.W.2d 596 (1983), in support of their position that when a guaranty contract is ambiguous, parol evidence is not admissible

to clarify the ambiguity, and that an ambiguity in a contract must be construed against the drafter. However, we need not discuss the difference between the majority and minority views in *Shamburger* since the rules of law involved there are simply not applicable in this case. Here, the trial court found the guaranty contract to be clear and unambiguous, not requiring further evidence to ascertain the meaning of the parties, and we agree with the trial court's conclusion.

Appellants also argue that the trial court erred in granting summary judgment in favor of appellee because there was no meeting of the minds as to the amount guaranteed and this is an essential term of the contract. In considering a motion for summary judgment, a judge may consider pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, to determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to summary judgment. *Hallmark Cards, Inc.* v. *Peevy*, 293 Ark. 594, 739 S.W.2d 691 (1987); ARCP Rule 56(c). Summary judgment is an extreme remedy and will be granted only when there is no genuine issue of material fact before the court; all proof must be viewed in the light most favorable to the party resisting the motion; and any doubts and inferences must be resolved against the moving party. *First National Bank of Wynne* v. *Hess*, 23 Ark. App. 129, 743 S.W.2d 825 (1988). However, parties are presumed to have read and understood their contracts. In *Connelly* v. *Beauchamp*, 178 Ark. 1036, 13 S.W.2d 28 (1929), the court stated the rule as follows:

> The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, if it can be done consistently with legal principles. The parties should always be bound for what they intended to be bound for, and no more. The intention of the parties means, however, the intention as shown by the contract, and not what they may have had in mind but did not express. The law presumes that the parties understood the import of their contract and that they had the intention which the terms of the contract manifest.

178 Ark. at 1042. *See also, Rodgers* v. *Lyon*, 256 Ark. 323, 507

S.W.2d 95 (1974). Here, there are uncontradicted affidavits that appellants were experienced business persons and were dealing with appellee at arms length. We find they are bound by the terms of the guaranty.

Since we have concluded that the contract was clear and unambiguous and that limiting the amount of the guaranty was a nonessential term, it follows that granting appellee summary judgment was proper.

Affirmed.

CORBIN, C.J., and COULSON, J., agree.