Edward WILLIAMS *v.* JOHNSON CUSTOM HOMES, et al.

CA 06-1048 264 S.W.3d 569

Court of Appeals of Arkansas
Opinion delivered October 3, 2007

[Rehearing denied November 7, 2007.*]

---

• BIRD and GRIFFEN, JJ., would grant rehearing.

*Frederick S. Spencer*, for appellant.

*Roberts Law Firm, P.A.*, by: *Jeremy Swearingen* and *Emily A. Neal*, for appellee Paysource, Inc.

*Bill H. Walmsley*, for appellees Johnson Custom Homes and Virginia Surety Company.

ROBERT J. GLADWIN, Judge. Appellant Edward Williams appeals the June 21, 2006 decision of the Arkansas Workers' Compensation Commission (Commission) finding that he is estopped under the election-of-remedies doctrine from pursuing a claim under Arkansas workers' compensation law against appellees Johnson Custom Homes and Virginia Surety Company, and further, that the constitutional issues raised by him are without merit. Appellant argues on appeal that the Commission has jurisdiction over this claim and that his voluntary acceptance of benefits under the laws of Ohio does not constitute an election of remedies or prevent him from pursuing a claim under Arkansas workers' compensation law. Further, appellant claims that appellees attempted to improperly and in bad faith avoid liability under Arkansas law by coercing him into signing

an agreement to select the state of Ohio as the state of exclusive remedy. Finally, appellant argues that the evidence he submitted establishes that the Executive Branch of the State of Arkansas and private interests have exerted pressure on workers' compensation administrative law judges (ALJs) and Commissioners, which has infringed upon their decisional independence and resulted in actual bias and the appearance of bias in the decisions of the ALJs and Commissioners. We affirm the decision of the Commission.

Appellant worked as a builder and was hired by Steve Johnson of Johnson Custom Homes in January 2002. Appellant believed he was employed by Steve Johnson. However, appellant admits to signing a W-4 tax-withholding form in early 2004 and other forms relating to his employment showing that Paysource was his employer. The forms specified that any work-related injury would be brought under the exclusive jurisdiction of the Ohio Bureau of Workers' Compensation. Appellant signed and returned these documents after being given time to review them. Appellant's paychecks came from Paysource.

On April 14, 2004, appellant fell from scaffolding while on the job. He injured his wrist and ankle, and he was placed in a leg cast after he sought emergency treatment. Appellant claims that his employer told him that his medical bills would be paid and treatment would be provided. He began receiving workers' compensation benefits from Ohio, but only after he made several telephone calls and provided forms to the Ohio Bureau by facsimile. He testified that he always talked to a certain woman in Ohio, Kristin, whenever he had a question regarding his coverage. When his doctor encouraged him to add his back and left knee to his workers' compensation claim, the employer denied coverage, and after a hearing in which appellant did not participate, the Ohio Bureau denied coverage. Appellant did not appeal that decision. He claims he did not know that he was required to travel to Ohio for hearings. He admits to having an attorney ready to represent him in Ohio.

On August 24, 2004, four months after appellant's injury, a Cease and Desist Order was filed by Mike Pickens, the former Insurance Commissioner for the State of Arkansas, wherein he found that Paysource had engaged in "illegal activities." Pickens found that Paysource was not licensed as a professional employer organization in violation of Arkansas Code Annotated section 23-92-315(20) (repealed July 16, 2003) and Arkansas Code Annotated section 23-92-404(a) (effective July 16, 2003); that Paysource was in arrears in payment of unemployment taxes; and that

for at least one of its Arkansas clients, Paysource had not obtained workers' compensation coverage from an insurance carrier licensed in Arkansas. Paysource was ordered to desist the writing of new employee leasing activities in this state, and to cease and desist all marketing activities in the State of Arkansas.

Appellant filed a claim with the Arkansas Commission asserting his entitlement to benefits as a result of the on-the-job injury. The parties stipulated that appellant's injuries would be compensable under Arkansas workers' compensation law. The ALJ determined that appellant was not estopped under the election-of-remedies doctrine from pursuing a claim under Arkansas workers' compensation law. Because appellant received what he was seeking from the ALJ, the ALJ did not address appellant's constitutional-law arguments.

On appeal, the Commission reversed the ALJ's decision, finding that appellant made an election of remedies by knowingly receiving benefits pursuant to the workers' compensation laws of the State of Ohio. Further, the Commission determined that all of appellant's constitutional arguments raised by appellant's attorney had been addressed in *Long v. Wal-Mart Stores, Inc.*, 98 Ark. App. 70, 250 S.W.3d 263 (2007), *Plummer v. Wal-Mart Stores, Inc.*, Workers' Compensation Commission F209057 (Oct. 10, 2005), *Edwards v. Galloway Sand & Gravel*, Workers' Compensation Commission F109737 (Oct. 11, 2005), and *Bland v. Baxter Regional Medical Center*, Workers' Compensation Commission F204378 (Aug. 16, 2005). The Commission found that the constitutional arguments were without merit and dismissed them. This appeal follows.

In appeals involving claims for workers' compensation, this court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *See Kimbell v. Ass'n of Rehab Indus. & Bus. Companion Prop. & Cas.*, 366 Ark. 297, 235 S.W.3d 499 (2006). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm the decision. *Id.* We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Dorris v. Townsends of Ark., Inc.*, 93 Ark. App. 208, 218 S.W.3d 351 (2005).

Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Patterson v. Ark. Dep't of Health*, 343 Ark. 255, 33 S.W.3d 151 (2000). When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Id.* The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Id.* Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony. *Arbaugh v. AG Processing, Inc.*, 360 Ark. 491, 202 S.W.3d 519 (2005). As our law currently stands, the Commission hears workers' compensation claims de novo on the basis of the record before the ALJ pursuant to Ark. Code Ann. § 11-9-704(c)(2) (Repl. 2002), and this court has stated that we defer to the Commission's authority to disregard the testimony of any witness, even a claimant, as not credible. *See Bray v. Int'l Wire Group*, 95 Ark. App. 206, 235 S.W.3d 548 (2006).

### A state's legitimate interest

All states having a legitimate interest in an injury have the right to apply their own law, either separately, simultaneously, or successively, to the same injury. *Missouri City Stone, Inc. v. Peters*, 257 Ark. 917, 521 S.W.2d 58 (1975); *Robinson v. Ed Williams Constr. Co.*, 38 Ark. App. 90, 828 S.W.2d 860 (1992). The voluntary payment of compensation under the laws of one state, which is accepted by the appellant, does not affect the appellant's statutory right to an award of compensation in another state unless the laws of that state prohibit such a claim. *Missouri City Stone, supra.* This is true, although there can be no double recovery; only the difference by which the second award is greater than the first may be recovered. *Id.*

Appellant contends that Arkansas is the only state with a legitimate interest in the injury he sustained. Appellant claims that Ohio's only connection is the sham employment relationship that appellees contend exists between appellant and Paysource. Appellant argues that he has no relationship with Paysource whatsoever. He argues that Steve Johnson and Paysource entered into a contractual relationship that does not involve appellant, and that they did this without his knowledge and with the intent of avoiding the laws of this state.

■ Appellant argues that even though he accepted benefits from Ohio, he is not prevented from pursuing a claim here. He cites *Missouri City Stone, supra,* stating that payment of benefits from one state does not bar him from asserting a subsequent claim under Arkansas workers' compensation law. In *Missouri City Stone,* the claimant was working in Oklahoma where he sustained injuries that included a crushed face and severed spine. He received some benefits from Oklahoma, but later filed a claim in Arkansas because the benefits were higher under Arkansas workers' compensation. Appellant argues that, like the instant case, this state in *Missouri City Stone* had a legitimate interest in the welfare of its citizens and found that the claimant was entitled to pursue benefits under Arkansas workers' compensation law. However, in the case at hand, appellant signed an agreement entitled "Agreement to Select the State of Ohio as the State of Exclusive Remedy," wherein it states that his rights under the laws of the State of Ohio shall be the exclusive remedy against the employer on account of injury. *Missouri City Stone* does not address a contractual agreement regarding exclusive remedies, and therefore, we hold that it can be distinguished from the instant case.

## Election of remedies

Appellant admits that jurisdiction is properly denied when an appellant makes a previous election of remedies by actively initiating proceedings or knowingly receiving benefits pursuant to the laws of another state. *Biddle v. Smith & Campbell, Inc.,* 28 Ark. App. 46, 773 S.W.2d 840 (1989); *see also, Houston Contracting Co. v. Young,* 267 Ark. 322, 590 S.W.2d 653 (1979). In *Biddle,* this court held that the claimant therein had elected her remedy by knowingly receiving benefits pursuant to Louisiana workers' compensation law based upon evidence that appellant received her benefit checks from Louisiana in the mail; the employer's office manager testified that she telephoned the claimant after the injury to get information to file the report in Louisiana, and that she told the claimant she was doing so; and a rehabilitation worker from Louisiana had visited the claimant in her home on more than one occasion.

Appellant contends that this court has also found that no election of remedies should be found to bar a claim if the employer or insurance carrier improperly or in bad faith channeled the claim into the other state. *Biddle, supra.* Appellant herein tries to distin-

guish his case from the facts in *Biddle* by arguing that his claim was submitted to Ohio without his knowledge or any action on his part. He claims that he was later advised that his benefits were being paid under Ohio law, but not until benefits had been initiated. Further, he contends that after he learned that his benefits were paid from Ohio, he immediately took action to pursue his claim in the proper forum in Arkansas. He makes this same argument to distinguish *Elliot v. Maverick Transportation*, 87 Ark. App. 118, 189 S.W.3d 62 (2004), where this court held that the claimant was precluded from seeking benefits in Arkansas where he actively initiated and participated in proceedings in Illinois by signing papers sent to him by his Illinois counsel and agreeing to file his claim in Illinois, and he knowingly received benefits pursuant to the laws of Illinois.

Under Arkansas case law, the election-of-remedies doctrine is a clean, two-part test: (1) whether the appellant actively initiated a claim for benefits in the state; or (2) whether the appellant knowingly received benefits pursuant to that state's law. *Biddle, supra.* Appellee Paysource argues that it was only after disagreeing with the decision of the Ohio Bureau that appellant tried to seek another bite at the apple to gain benefits from the State of Arkansas.

Paysource states that under *International Paper Company v. Tidwell*, 250 Ark. 623, 466 S.W.2d 488 (1971), the factors in determining jurisdiction include considering the place whose statute the parties expressly adopt by contract. Paysource claims it is undisputed that three other factors that are considered favor Arkansas as having jurisdiction: Appellant resides in Arkansas; appellant was injured in Arkansas; and appellant contracted to work in Arkansas. However, appellant also signed an agreement adopting the law and procedures of the State of Ohio respecting worker's compensation injuries. He received documentation that Paysource was his employer, out of Ohio, and his paychecks came from Paysource's Ohio account. He did not object to submitting claims for benefits under Ohio law or receiving those benefits. Under *Elliot, supra,* when two or more states have sufficient contacts for both to have jurisdiction, a dispositive factor is whether the appellant has elected his remedy in one of the states.

The substantial weight of the evidence supports the Commission's finding that appellant elected his remedy in Ohio because he actively initiated a claim for benefits and then knowingly received benefits through Ohio. This court has stated, "A claimant

should be held to his affirmative acts and the resulting consequences of making an election of remedies." *Biddle*, 28 Ark. App. at 48, 773 S.W.2d at 841.

The instant case can be distinguished from *Towery v. High Speed Electrical Company*, 75 Ark. App. 167, 56 S.W.3d 391 (2001), where this court held that jurisdiction in Tennessee was not proper because the claimant had not actively initiated proceedings there, nor had he knowingly received any benefits under Tennessee law. In the instant case, appellant filed paperwork in Ohio and received benefits from Ohio. Appellant initiated conversations regarding coverage with "Kristin" in Ohio, and applied to have further injuries covered by the Ohio Bureau.

Finally, we hold that *Elliot, supra*, is controlling. In *Elliot*, the claimant was an Oklahoma resident employed with an Arkansas company, but was injured in Illinois. His employer filed a claim in Arkansas and paid benefits under Arkansas law. He later filed a claim in Oklahoma and received benefits there before his case was dismissed by the Oklahoma Commission for lack of jurisdiction. The claimant filed a claim in Illinois and subsequently received benefits under Illinois law. This court held that the claimant had elected his remedy in Illinois because he actively initiated proceedings in Illinois and knowingly received benefits under Oklahoma and Illinois law. Because he elected his remedy in Illinois, this court held that Arkansas did not have jurisdiction.

Likewise, the appellant herein actively pursued his claim in Ohio. He communicated with the owner and secretary at his employment about submitting documentation to the Ohio Bureau, using the fax machine at work to do so. He admitted to contacting a representative of Paysource and the Ohio Bureau about the status of his claim there. He contacted his claims representative in Ohio and figuratively "lit a fire" to get his benefits caught up and regular payments commenced. We hold that these actions are tantamount to initiating a claim for benefits in Ohio, and pursuant to *Biddle, Tidwell*, and *Elliot*, appellant made an election of his remedies in the state of Ohio.

### Coercion and bad faith

Appellant argues that the document he was allegedly coerced into signing was nothing but an effort by appellees to avoid Arkansas workers' compensation law. He claims that under Ark. Code Ann. § 11-9-108(a) (Repl. 2002), no agreement by an

employee to waive his right to compensation shall be valid. Here, appellant argues that appellees tried to contractually relieve themselves of liability under Arkansas law by coercing him into signing the agreement to select Ohio as the state of exclusive remedy. He argues that by coercing him into signing the agreement, appellees in bad faith channeled the claim through the laws of Ohio instead of through Arkansas, which is the only state with a legitimate interest in this claim. He argues that he only received benefits from Ohio because appellees, in trying to avoid liability under Arkansas workers' compensation law, illegally channeled the claim through the Ohio Bureau.

Paysource argues that it did not improperly channel claims through the State of Ohio. Appellant signed and dated the agreement wherein he adopted the law and procedures of the State of Ohio respecting the pursuit of compensation for work injuries. Paysource contends that appellant is presumed to have knowingly and purposefully entered into the employment contract and to have bound himself by the choice-of-forum and choice-of-law provisions. Paysource argues that it is the court's duty to construe the contract in accordance with the plain meaning of the language used. *Fryer v. Boyett*, 64 Ark. App. 7, 978 S.W.2d 304 (1998). Further, Paysource points out that the Arkansas Supreme Court has consistently held that choice-of-forum and choice-of-law clauses in contracts are binding. *Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 362 Ark. 598, 210 S.W.3d 101 (2005).

Parties are presumed to have read and understood their contract. *See McCaleb v. Nat'l Bank of Commerce*, 25 Ark. App. 53, 752 S.W.2d 54 (1988). In Arkansas, the general rule is that if a person signs a document, he is bound under the law to know the contents of the document. *Banks v. Evans*, 347 Ark. 383, 64 S.W.3d 746 (2002). One who signs a contract, after an opportunity to examine it, cannot be heard to say that he did not know what it contained. *Dodson v. Abercrombie*, 212 Ark. 918, 208 S.W.2d 433 (1948).

 Appellant is literate, educated, and worked in management. He admitted that he held the agreement for several days before signing it and returning it to the secretary. He had plenty of time to ask questions before signing. We hold that even had appellant failed to read the document, he made an election of remedies in Ohio by taking affirmative steps to pursue benefits from the Ohio Bureau. Further, the question of bad faith is ultimately a fact question to be determined by the Commission.

We hold that the Commission's decision is supported by substantial evidence. In considering all the facts, including the Cease and Desist Order filed against Paysource, we are convinced that fair-minded persons with the same facts before them could have reached the conclusions arrived at by the Commission.

### Constitutional-law arguments

Finally, appellant makes a number of constitutional arguments. Specifically, he alleges that the executive branch and private interests have exerted pressure on the Commission and the ALJs to the point where the pressure has infringed on the independence of the Commission and resulted in biased decisions. Appellant contends that such procedures violate the separation-of-powers doctrine established by the Constitution of the State of Arkansas and the due-process rights of the parties appearing before the Commission. However, we rejected these same arguments in *Long v. Wal-Mart Stores, Inc., supra.* There is no reason to review these arguments again.

█ Accordingly, we affirm the Commission's decision, holding that appellant elected his remedy from the State of Ohio and that he was not coerced into doing so. We do not address the constitutional-law arguments made by appellant, as those arguments have been addressed by this court in recent prior opinions.

Affirmed.

MARSHALL, VAUGHT, and HEFFLEY, JJ., agree.

BIRD and GRIFFEN, JJ., dissent.

WENDELL L. GRIFFEN, Judge, dissenting. The majority has held that appellant, an Arkansas worker, "elected" Ohio as a "remedy" when he received workers' compensation benefits pursuant to Ohio law from an Arkansas employer for an injury that occurred in Arkansas. In so holding, it turns a blind eye on the bad faith actions of the employer, which led to appellant pursuing his workers' compensation claim in a forum where he had no legitimate contacts. Because I consider such bad-faith actions contrary to the public policy upon which the workers' compensation system is based and fundamentally unconscionable, I must dissent.

The majority opinion omits several essential facts. While emphasizing that appellant signed forum-selection documents, including the one entitled "Agreement to Select the State of Ohio

as the State of Exclusive Remedy," the majority opinion somehow avoids reference to evidence of bad faith by the employer. For instance, the majority opinion states that appellant thought that he was being employed by Steve Johnson. However, it fails to reveal that appellant obtained this belief after asking Johnson about PaySource and after Johnson told appellant that he (Johnson) was the employer. The majority opinion also omits appellant's testimony that Johnson's secretary told him (appellant) that he had to sign the forum-selection documents by the following week *in order to receive paychecks*. Another co-worker, Rick Stetka, also testified that he was told that he had to sign the documents in order to be paid.

Both the Commission and the majority erroneously state that this is an election-of-remedies case. The election-of-remedies doctrine bars more than one recovery on inconsistent remedies (*e.g.* a tort remedy versus a contract remedy). *Pro-Comp Mgmt, Inc. v. R.K. Enterprises, LLC*, 366 Ark. 463, 237 S.W.3d 20 (2006). The purpose of the doctrine is to prohibit more than one recovery for the same injury. *Regions Bank v. Griffin*, 364 Ark. 193, 217 S.W.3d 829 (2005). However, appellant is not seeking to pursue any remedy other than workers' compensation. He is exercising his right to pursue his workers' compensation claim under the laws of the state of Arkansas, which the majority concedes is the only state that has a legitimate interest in his compensable injury. The issue is not election of remedies at all, but election of the forum for appellant's claim. While precedent from this court has inaccurately referred to this as an election-of-remedies issue, *see Elliot v. Maverick Transp.*, 87 Ark. App. 118, 189 S.W.3d 62 (2004),[1] the issue is accurately framed as whether appellant made a valid election to pursue his workers' compensation remedy in Ohio rather than before the Arkansas Workers' Compensation Commission.

All states having a legitimate interest in a compensable injury may apply their own laws in adjudicating the claim. *Robinson v. Ed Williams Construction Co.*, 38 Ark. App. 90, 828 S.W.2d 860 (1992). Claims for compensation may be instituted in any state having jurisdiction over the claim. *Id.* The receipt of benefits under the laws of one state does not preclude the receipt of benefits under

---

[1] I am not advocating that this court overrule *Elliot* or any other precedent of this court. However, the court misspoke in *Elliot* when it referred to the issue as an election-of-remedies problem.

another state unless the first state so declares. *Missouri City Stone, Inc. v. Peters*, 257 Ark. 917, 521 S.W.2d 58 (1975). Several statutes establish Arkansas's public policy of making employers responsible for injuries suffered in the course and scope of one's employment. *See* Ark. Code Ann. §§ 11-9-103(a) (Repl. 2002) (binding every employer and employee in the state to the workers' compensation code); 11-9-105(a) (Repl. 2002) (establishing workers' compensation as the exclusive remedy for injured employees); 11-9-108(a) (Supp. 2007) (rendering void any agreement by an employee to waive liability under the workers' compensation code, unless otherwise provided in the chapter); 11-9-401(a)(1) (Repl. 2002) (mandating that every employee compensate its employees for disabilities and deaths from compensable injuries without regard to fault as a cause of injury); 11-9-1001 (Repl. 2002) (stating that the purpose of the workers' compensation code is to provide for disability benefits for injured workers, to pay reasonable and necessary medical expenses, and return the workers to the workforce). Therefore, any action which operates to divest an employee of rights under Arkansas workers' compensation law should be viewed with extra scrutiny.

In *Missouri City Stone*, our supreme court affirmed the claimant's pursuit of benefits in Arkansas even after the employer paid benefits under Oklahoma law. The claimant in that case was an Arkansas resident injured in Oklahoma. The majority now claims that the instant case is distinguishable because *Missouri City Stone* did not involve a forum-selection clause. Under *Missouri City Stone*, an employee who receives benefits from a foreign jurisdiction is not precluded from maintaining a claim under Arkansas law. That holding cannot be avoided by pointing to an agreement that was entered into in bad faith. It follows, therefore, that the decision in that case is controlling and factually on point.

In the instant case, the Arkansas employer required appellant to sign a forum-selection clause regarding a forum where neither the employer nor appellant had legitimate contacts. Arkansas courts enforce forum-selection clauses, *see Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 362 Ark. 598, 210 S.W.3d 101 (2005), but only if there is a substantial connection between the contract and the forum state. *Nelms v. Morgan Portable Bldg. Corp.*, 305 Ark. 284, 808 S.W.2d 314 (1991) (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957)). As stated in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471 (1985) (citations and internal quotes omitted), "The Due Process Clause protects an individual's liberty interest in not

being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." In enforcing a forum-selection clause, the constitutional touchstone remains whether the party has purposefully established "minimum contacts" with the forum state. *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)). Even the majority notes that the analysis under *Elliot* would apply "when two or more states have sufficient contacts for both to have jurisdiction." One does not establish those contacts merely by signing a forum-selection clause. Rather, jurisdiction becomes proper when those contacts proximately result from actions by the party that create a substantial connection with the forum state. *Rudzewicz, supra.*

This court should be focused on whether appellant, voluntarily and without bad faith on the part of the employer, pursued benefits in a foreign jurisdiction. However, under the guise of a bad-faith analysis, the majority merely undertakes a contract analysis without an in-depth analysis of the actions of the employer.[2] True, parties are presumed to have read and understood their contract, and parties are bound under the law to know the contents of the documents they sign. *See Banks v. Evans*, 347 Ark. 383, 64 S.W.3d 746 (2002); *McCaleb v. Nat'l Bank of Commerce*, 25 Ark. App. 53, 752 S.W.2d 54 (1988). However, the notion that a party is presumed to know the contents of the document he signs does not bind that party to agreements that are unconscionable or against public policy, such as the "agreement" in this case. The majority opinion stands for the proposition that an employer may channel workers' compensation claims to any state by using coercive action to secure a worker's assent to a forum-selection clause, even if the employee otherwise has *no* legitimate connections to that state. If this does not constitute bad faith, then one will be hard-pressed to find circumstances that do.[3]

---

[2] The Commission also glossed over appellant's bad-faith claim, devoting only one sentence to the issue in its opinion.

[3] The majority writes, "Appellate is literate, educated, and worked in management. He admitted that he held the agreement for several days before signing it and returning it to the secretary. *He had plenty of time to ask questions before signing.*" (Emphasis added.) This should beg the question of whether the average worker is in a good position vis-a-vis an employer to make inquiries when told to sign a document in order to continue receiving paychecks. It also disregards the fact that appellant obtained no consideration for "electing" to have his workers' compensation benefits adjudicated under Ohio law in Ohio despite having no contacts with that state.

The majority's analysis also operates to abrogate *Missouri City Stone*, which this court is bound to follow. *See, e.g., Smith v. Aluminum Co. of America*, 78 Ark. App. 15, 76 S.W.3d 909 (2002) (noting that the court of appeals is bound by the decisions of the supreme court). Our supreme court has declared that the receipt of benefits under the laws of one state does not preclude the receipt of benefits under another state unless the first state so declares. But under the majority's holding, once someone receives benefits under the law of one state, he cannot receive benefits under the laws of this state. In effect, the majority has eviscerated the holding in a supreme court case.

It is inconsistent with both due process and the public policy of the State of Arkansas to enforce a coerced "agreement" whereby an Arkansas employee is forced to pursue workers' compensation benefits from an Arkansas employer for a compensable Arkansas injury in a different state with which the employee has no connections. Such an agreement violates public policy, deprives Arkansas workers from the protection of Arkansas workers' compensation laws, and is patently unconscionable. It perverts fairness to hold that employers can meet due process requirements for minimum contacts by coercing employees to sign unconscionable agreements that deprive Arkansas employees of the right to prosecute their claims for Arkansas injuries before the Arkansas Workers' Compensation Commission.

I respectfully dissent and am authorized to state that Judge Bird joins this opinion.